# Richmond

STANLEY BALDERSON, ET AL. v. J. T. ROBERTSON, ADMINISTRATOR, ETC.

April 23, 1962.

Record No. 5393.

Present, All the Justices.

W. *Garland Clarke* (*Norris, Foster & Clarke,* on brief), for the plaintiffs in error.

*J. Clifford Hutt* (*Hutt & Robertson,* on brief), for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

Joseph H. Ashley was killed when struck by a log which rolled off a truck operated by Stanley Balderson as agent for Norris H. Sanders. Ashley's administrator brought this action against Balderson and Sanders, alleging that Ashley's death was due to Balderson's negligence. He recovered a verdict and judgment for $15,000 against both defendants, who here contend that Balderson was not guilty of any negligence and that the accident was caused by the negligence of Ashley, who assumed the risk of injury.

Balderson was called and examined as an adverse witness by the plaintiff and gave all the evidence there was as to how the accident happened. His evidence was as follows:

On the morning of September 29, 1959, Balderson, as directed by his employer, loaded the truck with logs and drove it into the lumberyard of Ashley and Roberts and parked it in the driveway of the mill yard. Ashley, the decedent (who was the father of the Ashley of the firm of Ashley and Roberts, was the manager of the mill and the yard foreman, whose duty it was to tally, or measure, the logs), drove up in his car and walked to the right-hand side of the truck where Balderson was standing. The truck was then sitting so that the logs on it were about even with a little office building across the road to its left, and with a rick of logs on its right.

The logs were stacked up on the truck and held in place by a chain which was secured to the chassis and passed over the top of the logs. The chain was pulled as tight as could be done by hand and then further tightened by a binder, which on this occasion was on the right-hand side of the truck, from which the logs were to be unloaded. When Ashley came up he did not have the equipment needed for measuring the logs and he said to Balderson, "You go ahead and undo the chain and roll part on this pile, and pull on ahead up to another pile and roll the rest on the back. I don't want to block the road. I will go get my book."

Ashley and Balderson went around to the front of the truck, Ashley continued toward the little office and Balderson went back to the right side to undo the chain. He took the binder off and undid the chain as he always did and then "flicked" the chain to release it, and as he did so a log rolled off to the left from the top of the pile on the truck. Prior to that time all the logs had looked like they were "laying up there solid as they could be". After the log fell Balderson walked around the end of the truck to pull the chain off and found Ashley lying on the ground near the truck. He was unconscious and lived but a short time. It was stipulated that his death was caused by the falling log.

Balderson last saw Ashley as he left the front of the truck. At that time nobody else was around the truck and it could not, he said, have been over two to three minutes from that time until he released the chain. He said the dangerous time in unloading logs is when the chain is taken off. He customarily called out a warning at such time if there was anybody around the truck. He knew that Ashley went toward his office to get his tallying equipment and that he had to come back by the truck to get where he could watch the unloading or tally the logs.

As a general rule, he said, the yard foreman directs where the log truck is to be unloaded and sees that it is placed where he wants it and then gets into a position to watch while the load is being unbound, but sometimes he was not around when you undid the chain. The place where Ashley told him to unload the logs on this occasion was the same place at which he had unloaded logs the day before.

As a witness in his own behalf Balderson testified that when he hauled logs to this mill Ashley always told him where to unload; that after he did so he, Balderson, unloaded them by himself; that on this occasion all the other people on the yard were up at the mill, 25 or 30 yards away, and nobody was near the truck other than Ashley; that while he and Ashley were standing at the front of the truck before he undid the chain he looked on the left side of the truck and nobody was there. There had been other occasions when Ashley had left him to get his tally book while he, Balderson, was unbinding his chain. On this occasion when Ashley left the front of the truck going toward the office he did not have to pass beside the logs and he could have come back the same way. Plaintiff's counsel asked him why he did not call out a warning when he shook the chain. He replied, "Well, I figured he was on the lookout for he told me to go ahead and do it."

There was no contradiction of the testimony of Balderson that Ashley specifically directed him to undo the chain and unload the logs. Nor is there any question that Ashley was the person who had the authority to give orders to Balderson as to when and where to unload the logs. Plaintiff's own witnesses testified that it was customary for the driver of the truck to find out from the yard manager, or the person who is to take up the logs, when to undo the chain and where to unload the logs, and that the driver does what the yard manager tells him; that it is the responsibility of the yard manager, or person who scales the logs, to see that he himself is in a safe position when he tells the driver to undo the chain. There was nothing to suggest to Balderson that after Ashley told him to release the chain he would come back to a position of danger beside the truck.

Plaintiff's additional evidence was directed to proving that the custom and usage with respect to unloading logs in congested areas did not permit the driver to unbind his chain in such areas without the assistance of someone else, customarily the yard manager; that it was customary for the yard manager to stand and watch the operation until the chain has been safely undone, and that the order to release the binder is given only when the yard manager is ready to supervise and in position to watch the logs when the chain comes off; that the truck driver and the yard manager have to work together and when they do not have each other in view a warning should be given when the chain is taken off; and that the unloading of logs in a congested area is hazardous.

The question of the defendants' liability in this case, however, is not determined by custom or usage, or by what duty they may have owed to somebody other than Ashley. It is determined by what occurred between Ashley and Balderson on this occasion. Ashley was in charge and had authority to give directions which it was Balderson's duty to obey. He directed Balderson to undo the chain and unload the logs while he went to the office a few feet away to get his measuring equipment. The defendants are not chargeable with actionable negligence toward Ashley because Balderson did what Ashley told him to do. It was not required of Balderson that he foresee that Ashley would put himself in a position of danger as a result of Balderson's carrying out Ashley's directions.

"An action for negligence only lies where there has been a failure to perform some legal duty which the defendant owes to the party injured." *Williamson* v. *Southern R. Co.*, 104 Va. 146, 149, 51 S. E. 195, 196; *Stephens* v. *Virginia E. & P. Co.*, 184 Va. 94, 99, 34 S. E.

2d 374, 377; *Palsgraf* v. *Long Island R. R. Co.,* 248 N. Y. 339, 162 N. E. 99, 59 A.L.R. 1253.

*b* Negligence carries with it liability only for consequences which, in the light of attendant circumstances, could reasonably have been anticipated by a reasonably prudent man. "One is not charged with foreseeing that which could not be expected to happen." Whether one has been guilty of negligence is to be determined by the court when the facts are undisputed or conclusively proved. *Wyatt* v. *Telephone Co.,* 158 Va. 470, 479-80, 482, 163 S. E. 370, 373-74, 82 A.L.R. 386.

*c* The law "will not furnish a person a remedy for a wrong where he cannot prove a legal claim for damages without showing that his own negligence intervened between the act of the alleged wrongdoer and the result complained of, and was the real, efficient, producing cause of his injury; * * *." *Bostwick* v. *Mutual Life Ins. Co.,* 116 Wis. 392, 399, 89 N. W. 538, 540. *Cf. Spence* v. *American Oil Co.,* 171 Va. 62, 73, 197 S. E. 468, 472.

"* * * An act which exposes another to risk of injury only by his failure to conform to those rules of conduct for his own safety with which he might reasonably be expected to comply does not violate the standards of due care. * * *." Nor is there any duty to warn against the obvious or supply a person with information he already has. *Blomberg* v. *Trupukka,* 210 Minn. 523, 526, 299 N. W. 11, 13. 65 C.J.S. Negligence, § 15 at p. 403.

The evidence offered by the plaintiff clearly failed to prove negligence against the defendants.

■ Plaintiff argues that there was no corroboration of Balderson's testimony as to what Ashley said to him and that § 8-286 of the Code requires corroboration of his testimony "directed toward the proof of his case." That section provides that in the situations it describes no judgment or decree shall be rendered "in favor of an adverse or interested party founded on his uncorroborated testimony". But Balderson's testimony was offered by the plaintiff himself in his effort to obtain a judgment against Balderson. It was not contradicted or inherently improbable and the plaintiff was bound by it. *Hailey* v. *Johnson,* 201 Va. 775, 778, 113 S. E. 2d 664, 666. Section 8-286 was not applicable here. *Cf. Robertson's Ex'r* v. *A. C. R. Co.,* 129 Va. 494, 505, 106 S. E. 521, 524.

■ Plaintiff also contends that the defendants did not make the point in the trial court that the plaintiff had failed to prove negligence on the part of the defendants. It is true that defendants' motion to strike

the plaintiff's evidence at its conclusion was put on the grounds that Ashley was guilty of contributory negligence and had assumed the risk in placing himself in a place of danger; but in the argument of his motion defendants' counsel asserted that there was no contradiction of Balderson's testimony that he was told by Ashley to undo the chain and that "as a matter of law he [Balderson] was entitled to undo the chain when he did." At the conclusion of all the evidence the defendants again moved to strike the plaintiff's evidence and for summary judgment, and their counsel again argued that Balderson had no reason to foresee that Ashley would be in a position of danger after he had told Balderson to undo the chain. On the return of the verdict the defendants moved to set it aside on the grounds that Ashley was guilty of contributory negligence and assumed the risk and that the verdict was contrary to the law and the evidence.

We conclude that the question of the defendants' negligence was sufficiently drawn to the attention of the court, who in fact expressed the view, in ruling on the defendants' first motion to strike the plaintiff's evidence, that the evidence was sufficient to support a finding by the jury that the sole proximate cause of the accident was the negligence of Balderson.

As stated, we disagree with the trial court and hold that the evidence was not sufficient to establish that Balderson was guilty of actionable negligence. In that view we do not reach the defenses of contributory negligence and assumption of risk.

The judgment complained of is reversed and final judgment will be entered here for the defendants.

*Reversed and final judgment.*