## Lehman H. Young, Sr., et al.

## v.

## Lehman H. Young, Jr.

Record No. 891083

June 8, 1990

Present: All the Justices

*John H. Rust, Jr. (Glenn H. Silver; Rust, Rust & Silver*, on briefs), for appellants.

*Sally Ann Hostetler (Manuel A. Capsalis; Kathleen G. Gallagher; Odin, Feldman and Pittleman; Talbott & Gallagher*, on brief), for appellee.

JUSTICE RUSSELL delivered the opinion of the Court.

This dispute concerns the ownership of stock in a closely held corporation. It turns on the law of *inter vivos* gifts.

In the 1930's, Lehman H. Young, Sr. (Young, Sr.), established a printing business in Fairfax County known as The Virginia Press. He was sole owner of the business and operated it as a sole proprietorship for about 33 years. In 1970, Young, Sr., formed a corporation, The Fairfax Printers Inc., to which he contributed all the assets of the printing business in exchange for all the shares (405 shares) of originally issued Class A voting stock. Later, Young, Sr., transferred most of his shares to his sister, Cleo Y. Adkerson, to hold in trust for himself. As the corporation required further infusions of capital, Young, Sr., caused additional shares to be issued, purchasing them with his own funds, and transferring those shares also to his sister, in trust. He retained only a few shares in his own name.

In 1980, and in each succeeding year through 1984, Young, Sr., directed his sister to transfer some of the shares she held in trust for him to his two daughters, Deborah Young Harris and Pamela Young Walker, and to his son, Lehman H. Young, Jr. (Young, Jr.). Each such transfer was represented by a new certificate issued in the donee child's name. The corporation issued new certificates for 29 shares given to each child in the years 1980, 1981, and 1982; for 27 shares given to each child in 1983 and 1984; and for an additional 100 shares given to each daughter in 1984. The shares given to Young, Jr., remain in his name as Class A voting stock and are not in dispute in this appeal. The controversy concerns the status of the shares purportedly given to the daughters.

The articles of incorporation provide for Class A voting stock and Class B non-voting stock but make no provision for the conversion of one class into another. When Young, Sr., arranged annual gifts of his Class A shares to his daughters, new stock certificates were issued in the daughters' names for Class B non-voting stock. No action, however, was taken by the Board of Directors or by the shareholders to authorize the reclassification of these shares from Class A to Class B.

The new certificates were registered in the corporate stock transfer ledger, but Young, Sr., retained possession of all the certificates, except those which represented the initial gifts in 1980. On each occasion of a purported gift to a daughter, Young, Sr., acknowledged receipt of the certificate's delivery by signing the daughter's name in the receipt space of the stock transfer ledger and by making the notation, "L H Young Sr. Atty." It is undisputed that neither daughter ever appointed Young, Sr., her attorney in fact, that neither daughter ever received delivery of a stock certificate after 1980, and that, except for the 1980 gifts, neither daughter knew of the purported annual gifts when Young, Sr., attempted to make them.

In 1987, a dispute arose between father and son concerning the business. At that time, the stock transfer ledger reflected the following:

| Owners of Class A Shares | No. of Shares |
| --- | --- |
| Lehman H. Young, Sr. | 47 |
| Cleo Y. Adkerson | 6 |
| Lehman H. Young, Jr. | 242 |
| Howard F. Young[1] | 1 |
| Esther and Robert Parcelles | 2 |

| Owners of Class B Shares | No. of Shares |
| --- | --- |
| Arthur C. Keller | 1 |
| Deborah Young [Harris] | 241 |
| Pamela Walker | 241 |

Young, Sr., and his sister, Cleo Adkerson, were, respectively, president and secretary of the corporation. In October, 1987, Young, Sr., caused 254 shares of stock to be transferred on the

[1] Howard F. Young died in 1987. His share was evidently reacquired by the corporation.

stock transfer ledger from his daughters' names to his own. He also caused a new certificate to be issued in his name showing these 254 shares as Class A voting stock. This, of course, gave him voting control. At the annual meeting of shareholders on January 15, 1988, the corporate records showed the following:

| Owners of Class A Shares | No. of Shares |
| --- | --- |
| Lehman H. Young, Sr. | 301 |
| Cleo Y. Adkerson | 6 |
| Robert Parcelles | 2 |
| Lehman H. Young, Jr. | 242 |

At the 1988 shareholders meeting, after the shares were voted as above, Young, Sr., Young, Jr., and Cleo Adkerson were elected as the Board of Directors. The Board appointed Young, Sr., as president, Cleo Adkerson as secretary, and Young, Jr., as vice-president and treasurer. Young, Jr., continued to operate the printing plant, as he had done for some time. It is undisputed that all his shares in the corporation had come to him by gift from his father, except for one share which he had purchased for $100.

In June 1988, Young, Jr., filed this proceeding as a petition to set aside an election of directors pursuant to Code § 13.1-681.[2] He asked for vacation of the actions of the shareholders' January 1988 meeting, judicial determination of the proper shareholders and their respective interests, and the election of a new Board of Directors.

After hearing the evidence *ore tenus*, the court, by letter opinion, followed by final order entered June 8, 1989, held that the January 1988 election of directors was invalid because the voting was based upon improper voting lists, Class B stock was improperly voted, and cumulative voting was improperly permitted. The court held that the conversion of Class A stock to Class B, although *ultra vires*, was ratified by the shareholders, and that the purported gifts of stock from Young, Sr., to his daughters were

---

[2] That section provides, in pertinent part:
Any shareholder aggrieved by an election of directors may, after reasonable notice to the corporation and each director whose election is contested, apply for relief to the circuit court in the county or city in which the principal office of the corporation is located . . . . The court shall proceed forthwith in a summary way to hear and decide the issues and thereupon to determine the persons elected or order a new election or grant such other relief as may be equitable.

valid, consummated, and beyond the power of Young, Sr., to revoke. The court concluded that the attempt of Young, Sr., to recapture the daughters' shares was void and ineffectual. The court established a revised list of shareholders, showing Young, Jr., in voting control, and ordered a new election of directors.

We granted Young, Sr., an appeal. He presents two questions: (1) whether his purported transfers to his daughters constituted valid gifts, and (2) whether the conversion of the stock from a voting to a non-voting classification was valid. Because we consider the first question dispositive, we do not reach the second.

Young, Jr.'s petition requested the court to "determine the proper ownership of the stock." Indeed, the court would have been unable to rule on the issues presented to it without doing so. This necessitated tracing the devolution of title to the disputed shares.

■ The ownership of stock as reflected in the corporate records is *prima facie* correct, *see* Code § 13.1-661B. Neither the corporation's records nor the outstanding stock certificates, however, are a verity. As we said in *Swan* v. *Swan's Ex'r*, 136 Va. 496, 519, 117 S.E. 858, 865 (1923):

> [I]t is quite possible and often happens, for reasons of convenience or otherwise, that stock held in the name of one person really belongs to another. In such a case the certificate, though *prima facie* evidence of ownership in the person to whom it has been issued, possesses no such magic or sacredness as to prevent an inquiry into the facts. Sometimes the transferee is merely a nominal holder or "dummy," and in that event, although the transfer may be perfectly regular and complete on its [face], the true ownership remains in the transferor, and that fact may be shown.

(Citation omitted.)

■ It is undisputed that the 254 shares in question were initially the subject of a valid original issue to Young, Sr., who paid value for them in order to capitalize the corporation. The dispositive question is whether they were ever validly transferred from him to his daughters. Because the daughters paid no consideration for them, principles governing gifts *inter vivos* apply.

■ In order to establish a gift *inter vivos*, the following elements must be shown:

(1) The gift must be of personal property; (2) possession of the property must be delivered at the time of the gift to the donee, or some other for him and the gift must be accepted by the donee; and (3) the title of the property must vest in the donee at the time of the gift.

*Taylor, Administratrix* v. *Smith*, 199 Va. 871, 874, 102 S.E.2d 160, 162-63 (1958) (citations omitted). Further, the gift is effective only if the donor has donative intent at the time of the gift and if there is "such actual or constructive delivery as divests the donor of all dominion and control over the property and invests it in [the] donee." *Id.* at 874, 102 S.E.2d at 163 (citations omitted). *See also Brown* v. *Metz*, 240 Va. 127, 393 S.E.2d 402 (this day decided).

The common law requirements of delivery and acceptance are not removed by those provisions of the Uniform Commercial Code pertaining to the transfer of securities. Code § 8.8-309 (1989 Cum. Supp.) provides:

An indorsement of a certificated security, whether special or in blank, does not constitute a transfer until delivery of the certificated security on which it appears or if the indorsement is on a separate document, until delivery of both the document and the certificated security.

Code § 8.8-313 (1989 Cum. Supp.) provides, in pertinent part:

(1) Transfer of a security . . . to a purchaser occurs only:

(a) at the time he or a person designated by him acquires possession of a certificated security.

The term "purchaser" includes a donee. Code § 8.1-201(32) and (33).

Code § 8.8-102 (1989 Cum. Supp.) distinguishes between a "certificated security" and an "uncertificated security" by providing that the former is "represented by an instrument," -102(a)(i), and the latter is "not represented by an instrument," -102(b)(i).

The securities in the hands of Young, Sr., were at all times "represented by an instrument." At common law, the securities could be the subject of a valid *inter vivos* gift to the daughters only if delivered either to them, or to someone designated by

them, in such manner as to "divest the donor of all dominion and control" over the securities. Further, the daughters must "accept" them. Under the UCC, the daughters must "acquire possession" of the certificates, or such possession must be acquired by a "person designated by" the daughters. The prerequisite elements of delivery to, and acceptance by, the daughters, are entirely lacking on the present facts. Because the disputed securities were never delivered to the daughters nor to anyone designated by the daughters to receive them, no *inter vivos* gift was ever made. These undisputed facts were more than sufficient to overcome the *prima facie* showing of ownership made by the corporate records.

■ Because ownership of the disputed shares remained in Young, Sr., the ownership of Class A stock was correctly shown on the shareholder's list at the time of the 1988 election of the Board of Directors. Because the purported gifts to the daughters were incomplete, Young, Sr.'s effort to reclassify the Class A shares as Class B shares in the daughters' names was ineffectual. He was, therefore, entitled to vote the shares at the 1988 shareholders' meeting.

■ Young, Jr., argues on appeal that Young, Sr., having caused the corporate records to reflect annual gifts of stock to the daughters, should now be estopped to deny the validity of such gifts. We reject that argument for two reasons. First, the daughters, having no knowledge of the purported gifts, made no change of position in reliance on them and suffered no disadvantage because of them. Therefore, an essential element of estoppel is lacking. *See Cowan v. Psychiatric Associates, Ltd.*, 239 Va. 59, 63, 387 S.E.2d 747, 749 (1990). Second, the daughters are not contesting Young, Sr.'s apparent change of mind; the contest is made only by Young, Jr. As a stranger to the purported gifts, he had no standing to enforce them. *See First Va. Bank-Colonial v. Baker*, 225 Va. 72, 301 S.E.2d 8 (1983).

The foregoing conclusions render moot the remaining issues on appeal.[3] Because the trial court erroneously vacated and held void

---

[3] As noted above, the trial court found that Class B stock was improperly voted and the cumulative voting was improperly permitted at the 1988 shareholders' meeting. Because no error was assigned to those rulings, we will not consider them. Rule 5:17(c). Nevertheless, those improprieties had no effect on the election of the Board of Directors because of the voting strength of the Class A stock.

all actions taken at the January 15, 1988 shareholders' meeting, we will reverse the final decree.

*Reversed and final judgment.*