SUSAN BROWN, ADMINISTRATRIX, ETC.

V.

DR. MELVIN METZ

Record No. 891222

June 8, 1990

Present: All the Justices

*Richard J. Stahl (James R. Hart; Dixon & Smith,* on briefs), for appellant.
*Stephen K. Christenson (Thomas E. Campbell; Kendrick, Gearheart, Aylor & Lockowandt,* on brief), for appellee.

JUSTICE LACY delivered the opinion of the Court.

In this appeal, we must decide whether plaintiff administratrix produced evidence sufficient to support her allegations that certain bonds belonged to the estate of the decedent.

Susan Brown, daughter of Dr. Herbert Metz and administratrix of his estate, filed suit in 1988 seeking to compel the return of certain personal property to his estate. Brown alleged that her uncle, Dr. Melvin Metz, had certain bonds in his possession that did not belong to him but were the property of Herbert Metz's estate, and that Melvin Metz "unjustly detains [the property], although

Plaintiff has an immediate right to possession." Melvin Metz admitted that he had the bonds but denied all other allegations.

At the close of Brown's evidence, the trial court granted defendant's motion to strike and held that Melvin Metz owned the bearer bonds in his possession based on a gift *causa mortis* from Herbert Metz. Brown appealed this decision.

Brown asserts that her evidence established that she was the administratrix of Herbert's estate, that Herbert kept bearer bonds in his safe deposit box, and that, shortly before Herbert's death, Melvin took the bonds and now refuses to return them to the estate. According to Brown, this evidence, in conjunction with Melvin's failure to prove a gift *causa mortis*, should have been sufficient to withstand Melvin's motion to strike.

Melvin contends that Brown's evidence not only failed to establish the estate's ownership of the bonds, but affirmatively showed that the bonds were a gift *causa mortis* from Herbert to Melvin. Under these circumstances, Melvin asserts that the trial court correctly granted his motion to strike Brown's evidence.

On appeal, Brown's evidence, consisting solely of her testimony and that of Melvin Metz, must be considered in the light most favorable to her. In 1973, Herbert Metz gave Melvin Metz a key to a safe deposit box in which Herbert kept a number of bonds. Melvin did not know what was in the safe deposit box, and did not use the key. During the ensuing years, Herbert repeatedly told Melvin that if anything should happen to him, Melvin was to go to the box, remove its contents, give Brown whatever had her name on it, and keep the rest for his own use and that of his family. Similarly, Herbert often told Brown that he had bonds for her, and that Melvin "would take care of it if anything ever happened to him."

In 1987, Herbert Metz became terminally ill. He was admitted to Jefferson Memorial Hospital and later transferred to Georgetown Hospital.

Melvin testified that, during his visits with his brother in the hospital, Herbert specifically told him to go to the safe deposit box, "empty the contents of the box and give to [Brown] what had her name on it, and the rest was to be for my use and my family's use." Initially, Melvin did not retrieve the bonds; however, Herbert insisted, and Melvin finally went to the box and removed the contents on July 13, 1987. When Melvin informed Herbert of his actions the next day, Herbert responded, "Good."

Brown visited her father at the hospital during the following week. At that time, Herbert again told her that he had bonds for her in the safe deposit box, and that Melvin "was going to take care of it and give it to [Brown] if anything happened to him."

Herbert Metz died on July 31, 1987. Melvin delivered the bonds with Brown's name on them to her at Herbert's funeral, but refused to give her any other bonds.

■ We have previously described the plaintiff's burden of proof under these circumstances:

> And the defendant having possession of them under a claim of ownership, (it is not material that it should be by *donatio causa mortis*, if it is *inter vivos*,) which possession he is proved to have had before the death of decedent, and no fraud or unfairness being shown or alleged in the procurement of the possession, the onus is upon the plaintiffs to prove their allegation that they were the property of the decedent at his death. . . .

*Morrison* v. *Grubb*, 64 Va. (23 Gratt) 342, 350 (1873). Therefore, although Brown showed that the bonds belonged to Herbert shortly before his death, this was insufficient to prove her allegation that the property belonged to Herbert's estate.

Brown argues that a transfer of ownership from Herbert to Melvin occurred only if there was a valid gift *causa mortis*. She contends that the gift fails here because there was no delivery of the gift, and because there was no corroboration of Melvin's testimony regarding the gift as required under § 8.01-397, the "deadman's statute."

■ Brown contends that the evidence is insufficient to establish a gift because "[a]s no object passed between Herbert and Melvin at the time of the so-called gift there was no delivery." Under Brown's theory of delivery, after Melvin retrieved the bonds from the safe deposit box, Herbert would have had to take the bonds from Melvin and then to have passed them back to Melvin, or to have passed a key, a note, or some other tangible object to Melvin. While delivery and acceptance must be shown to establish a gift *causa mortis, see Young* v. *Young*, 240 Va. 57, 393 S.E.2d 398 (1990) (this day decided), we have not retreated to such a formalistic approach and refuse to do so here. Delivery occurred when

the donee, at the donor's instruction, removed the bonds from the donor's custody and exercised dominion and control over them. *Id.*

In determining whether a gift *causa mortis* has occurred, we are guided by principles of reason and common sense as applied to the facts of each case. *Elam v. Keen*, 31 Va. (4 Leigh) 333, 335 (1833). "If the intention to give is attended by such words or acts of the donor, which, under the circumstances and relations between the parties, indicate that the donor surrendered the power of dominion and control over the subject matter, then a delivery sufficient in law is made." *Snidow v. First National Bank of Narrows*, 178 Va. 239, 249, 16 S.E.2d 385, 388-89 (1941). Furthermore, the delivery need not be simultaneous with the words of donation. *Thomas v. First National Bank of Danville*, 166 Va. 497, 506, 186 S.E. 77, 81 (1936).

The essence of delivery, then, is surrender of dominion and control of the gift by the donor. Here, Melvin took possession of the bonds at his brother's insistence while his brother was on his deathbed in 1987. Herbert knew Melvin had the bonds and made no attempt to regain possession, dominion, or control of the bonds and continued to tell Brown that Melvin would deliver her property to her if something "happened" to him.

Herbert's gift was no longer executory; it was an act undertaken in contemplation of his death and completed prior to his death when Melvin obtained possession, dominion and control of the bonds. Under these circumstances the requirements for delivery of a gift *causa mortis* were satisfied.

Finally, Brown asserts that Melvin's testimony, while sufficient to establish a gift from Herbert to Brown, cannot establish a gift from Herbert to Melvin without corroboration under § 8.01-397. This assertion is without merit.

Brown called Melvin, an adverse party, as a witness. Melvin testified that he obtained the bonds at Herbert's direction during Herbert's last illness and with Herbert's instructions to use the bonds for himself and his family. His testimony was uncontradicted and was not inherently improbable. Therefore, Brown was bound by Melvin's testimony. *Crabtree v. Dingus*, 194 Va. 615, 622, 74 S.E.2d 54, 58 (1953); *Saunders v. Temple*, 154 Va. 714, 726, 153 S.E. 691, 695 (1930). We have held that the deadman's statute is inapplicable in instances where a plaintiff offers an adverse party's testimony in his case and that testimony is not con-

tradicted or inherently improbable. *Balderson* v. *Robertson*, 203 Va. 484, 488, 125 S.E.2d 180, 184 (1962).

The evidence produced by Brown in this instance failed to establish ownership of the bearer bonds by Herbert Metz's estate. For the reasons stated, we will affirm the judgment of the trial court.

*Affirmed.*