442

## CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE

Hugh O. Miller and
Lawrence Wayne Burks

v.

Fred H. Quarles et al.

September 15, 1993

Case No. (Chancery) 7536-C

BY JUDGE JAY T. SWETT

This is an action brought under Va. Code § 55–80 in which the plaintiffs, Hugh O. Miller and Lawrence Wayne Burks, ask this court to set aside certain deeds, conveyances, and transfers made by defendant, Fred H. Quarles. The plaintiffs contend that the deeds, conveyances, and transfers were made with the intent to delay, hinder, or defraud Quarles's creditors, including the plaintiffs. In addition to Fred H. Quarles, the defendants are Hollis H. Quarles, Quarles Properties, Inc., McLeod, Alexander, Powel & Apffel, P.C., Ronald D. Wiley, Jr., and Mr. L. G. Metz.[1] Hollis H. Quarles (hereinafter Mrs. Quarles) is the wife of defendant, Fred H. Quarles (hereinafter Mr. Quarles). Quarles Properties, Inc., is a Virginia corporation whose stock is owned by Mr. Quarles. McLeod, Alexander, Powel & Apffel, P.C. (hereinafter McLeod, Alexander) is a creditor of Mr. Quarles. Mr.

---

[1] Virginia Federal Savings Bank was an original defendant. however, Mr. Metz was substituted for Virginia Federal Savings Bank by an Order entered on June 5, 1992.

Wiley and Mr. Metz are Trustees under a Deed of Trust on one of the parcels which is the subject matter of the suit.[2]

Evidence was taken on May 7 and on June 15, 1993. The parties have submitted post-trial briefs. Based upon the evidence and after consideration of the argument of the parties, it is this court's decision that the plaintiffs are entitled to the relief requested.

There are four conveyances at issue. Two involve transfers of stock in corporations which hold title to real estate. The corporations are Fontaine Avenue Properties, Inc., and Quarles Properties, Inc. On January 3, 1989, Quarles caused 1,000 shares of stock that he held in each corporation to be reissued by the corporation to Mr. Quarles and to his wife, Mrs. Quarles, with rights of survivorship. The third conveyance involves the marital residence of Mr. and Mrs. Quarles located on Jefferson Park Avenue. On March 15, 1990, title to the residence was conveyed from Mr. Quarles to Mr. and Mrs. Quarles as tenants by the entirety.

The fourth conveyance involves a deed dated March 22, 1990, in which a one-third interest in several Cherry Avenue vacant lots was transferred from Mr. Quarles to Mr. and Mrs. Quarles as tenants by the entirety.

### Facts

Sometime in 1986, the plaintiffs, Hugh O. Miller and Lawrence Wayne Burks, entered into an agreement with Fred Quarles whereby Quarles was to obtain financing for a real estate project. Under that agreement, the plaintiffs advanced Quarles approximately $60,000. When the financing was not obtained, Quarles returned $10,000 and refused to refund the balance. In November of 1988, Miller and Burks filed suit against Quarles and Commonwealth Capital Corporation, a Virginia corporation owned by Quarles. Quarles retained J. Lloyd Snook, III, to represent him in defense of the suit and to pursue a counterclaim against Miller and Burks seeking $500,000 for Commonwealth Capital Corporation for services rendered. The case was tried without a jury in this court with the final evidentiary hearing heard in February of 1990. This court rendered its decision in July of 1990 and entered judgment in favor of Miller and Burks against Commonwealth

---

[2] The original suit also sought relief under Va. Code § 55–81, but that claim has been abandoned by the plaintiffs.

Capital Corporation in the amount of $50,000.00. This court did not enter judgment against Quarles in his individual capacity on the ground that Quarles was at all relevant times acting as an officer of Commonwealth Capital Corporation. The $500,000 counterclaim was denied.

All parties appealed this court's decision. On November 8, 1991, the Supreme Court of Virginia affirmed the judgment in favor of Miller and Burks against Commonwealth Capital Corporation. The Supreme Court reversed this court's decision regarding Quarles and entered judgment in favor of Miller and Burks against Quarles in the amount of $50,000█ Since the entry of that judgment, neither Quarles nor Commonwealth Capital Corporation have made any payments to Miller or Burks.

In an entirely unrelated matter, Mr. Quarles was named as a defendant in a suit filed in Galveston, Texas, in late July of 1987. The plaintiff was McLeod, Alexander, Powel & Apffel, a Galveston, Texas, law firm who had represented Commonwealth Airlines, Inc., in litigation in Texas. Commonwealth Airlines was a corporation owned by Quarles. McLeod, Alexander sued Quarles and Commonwealth Airlines for unpaid legal fees of $11,725.00 plus costs for services rendered to Commonwealth Airlines. Quarles was sued on the ground that Quarles, as owner of Commonwealth Airlines, had agreed to or was otherwise responsible for the legal fees incurred.

Quarles initially represented himself in the suit. He promptly removed it to the United States District Court for the Southern District of Texas.[4] In April of 1989, judgment was entered against Quarles in the amount of $11,725.00. In May of 1989, the District Court assessed costs against Quarles in the additional amount of $44,603.00. Quarles appealed the case to the United States Court of Appeals for the Fifth Circuit. On February 28, 1990, the Fifth Circuit affirmed the judgment against Quarles but remanded the case back to the trial court for a redetermination of costs█ In August of 1990, the District Court af-

---

[4] In April of 1988, attorney Gerson Bloom entered an appearance on behalf of Quarles.

firmed the $11,725.00 judgment against Quarles and taxed costs of $31,537.00.[6]

There was no monetary consideration exchanged or given by Mrs. Quarles to Mr. Quarles for any of the four conveyances in question. The effect of the conveyances was that neither the stock nor the real estate would be available to satisfy any judgment rendered against Quarles.

## Decision

There are two preliminary legal issues to address. The first is whether the transfer of stock and the transfer of the interest in the real estate were valid gifts if Mrs. Quarles was not given the stock certificates or the deeds or was unaware that the conveyances had occurred. The second issue is whether the plaintiffs are required to prove that Mrs. Quarles had actual or constructive notice of her husband's fraudulent intent at the time of the gifts or transfers.

Each conveyance involves a transfer of ownership of property from Mr. Quarles in his individual name to Mr. and Mrs. Quarles as tenants by the entirety or in joint names with rights of survivorship. This is not a situation where one person has made a gift of real or personal property and the donor divests all interest in the property and transferred all the interest to someone else. Thus, the plaintiffs' reliance on *Young v. Young*, 240 Va. 57 (1990), is misplaced. There the Supreme Court held that in order to effect a valid inter vivos gift of corporate stock, there must be delivery to and acceptance by the donee. In *Young, supra*, the father attempted to make a gift of stock to two daughters. While change of ownership of the stock was reflected in the corporate records, the father retained dominion and control over the securities. 240 Va. at 63–64. However, the case here does not involve a transfer of stock from one person to another. Here, the transfer was from Mr. Quarles to Mr. and Mrs. Quarles. While the evidence established that Mrs. Quarles was not given the newly-issued certificates and perhaps did not even know of the transfer, the fact that Mr. Quarles retained an interest in the stock makes this case distinguishable from *Young*.

---

[6] Quarles also appealed that decision to the United States Court of Appeals for the Fifth Circuit. The judgment including the taxation of costs was affirmed in all respects. [Further proceedings in this litigation, *McLeod, Alexander v. Quarles*, are reported below at page 513.]

The same reasoning applies to the two real estate deeds.[7] Each deed transferred an interest in the property from one spouse to both spouses to be held as tenants by the entirety. In such a case, this court does not find a requirement that there be either notice of or a physical delivery of the gift to the new joint owner.

The second issue was raised at the conclusion of the plaintiffs' evidence and again at the conclusion of all the evidence. The defendants moved to strike the evidence, arguing that there had been no showing that Mrs. Quarles had knowledge of any facts sufficient to place her on notice of her husband's fraudulent intent regarding the conveyances. The defendants argue that such a showing is required under Va. Code § 55–80 and by *Hutcheson v. Savings Bank*, 129 Va. 281 (1921). This court took the motions under advisement. Having considered the statute and the cases cited by the parties, it is my conclusion that no showing is necessary where the transferee has not furnished valuable consideration in exchange for the conveyance.

The first sentence of § 55–80 provides that every gift, conveyance, or transfer of property given with intent to delay, hinder, or defraud creditors is void as to those creditors. The second sentence of the statute qualifies the first sentence in a significant way.

> This section shall not effect the title of a purchaser for valuable consideration, unless it appears that he had notice of the fraudulent intent of his immediate grantor or of the fraud rendering void the title of such grantor.

By its own terms, this sentence applies to cases where the conveyance or transfer is to one who has given valuable consideration. There is no issue here that the transfers of stock and real estate by Mr. Quarles to himself and to his wife as tenants by the entirety lacked any valuable consideration.

Although there is language in *Hutcheson v. Savings Bank, supra,* that would at first appear to support the defendants' argument, the issue here was not the basis for the Court's decision. The evidence in *Hutcheson* was that the transfer of the real estate was from a father to a son where the consideration was repayment of a loan of $6,000.00, 129 Va. at 292. The principal issue on appeal was the sufficiency of the

---

[7] Mrs. Quarles signed the deed to the Jefferson Park Avenue marital residence but did not sign the deed for the transfer of the Cherry Avenue lots.

evidence of fraud to justify the trial court in setting aside the conveyance of the real estate. The Court affirmed that the evidence was sufficient to find fraud on the part of the grantor as well as notice of the grantor's intent on the part of the grantee. *Hutcheson* did not involve the question of the applicability of the second sentence in § 55–80 where the conveyance did not involve valuable consideration.

It is my conclusion that whether a grantee shares the grantor's fraudulent intent is an issue only when the grantee has given value. This is consistent with the policy behind the statute. Voluntary conveyances between persons, such as close family members, which lack valuable consideration should be set aside when the transfers are made for the purpose of defrauding, delaying, or hindering creditors. On the other hand, where valuable consideration is given or paid by a grantee to a debtor whose intent was to delay, hinder, or defraud other creditors, an innocent grantee should not be at risk in having the conveyance set aside where the grantee acts in good faith and gives valuable consideration in exchange for the property. But where both grantor and grantee share the grantor's fraudulent intent or where the grantee has knowledge of facts which should put the grantee on notice about the validity of the transaction, the courts should not be hesitant to set aside such conveyances where fraud is proven.

It would be contrary to the purpose of the statute if a debtor could fraudulently transfer an interest in his property to a close family member without consideration where the grantee is unaware of the transfer or of the wrongful intent of the grantor and have the conveyance upheld because the creditors could not prove the grantee shared the grantor's fraudulent intent. This is particularly true under circumstances such as are presented here where the grantor retains an ownership interest in the property and conveys it to himself and his wife as joint tenants with rights of survivorship. To require the plaintiffs to prove that Mrs. Quarles knew of Mr. Quarles's fraudulent intent at the time of the transfers where she was never told of some of the transfers and gave no consideration for the property flies in the face of common sense and would defeat the purpose of the statute.

### Proof of Fraud

Under § 55–80, the plaintiff must prove by clear and convincing evidence that the conveyances in question were made by Mr. Quarles with the intent to hinder, delay, or defraud his creditors. In some cases,

the circumstances of the conveyances may be such as to establish a *prima facie* case of fraud with the burden shifting to the parties seeking to uphold the transaction to establish its validity. *Hutcheson v. Savings Bank*, 129 Va. 281, 291 (1921). Such evidence has been referred to as constituting "badges of fraud." A number of such "badges of fraud" are listed in Volume 9A of Michie's Jurisprudence, § 15, *Fraudulent and Voluntary Conveyances*. Those that are applicable here include (1) the relationship of the parties, (2) the pursuit of the grantor by creditors at the time of the conveyance, (3) lack of consideration, and (4) a retention of an interest in the property by the grantor.

Here, the evidence was sufficient to establish a *prima facie* case that each of the four conveyances was made by Mr. Quarles with the intent to defraud, hinder, or delay his creditors. Each transfer was from Mr. Quarles to Mr. and Mrs. Quarles as tenants by the entirety. It is well settled in Virginia that transactions between husband and wife should be closely scrutinized to be sure that such conveyances are not made for the purpose of protecting the husband's property from the reach of creditors. *Morriss v. Bronson*, 170 Va. 516, 521 (1938).

The evidence was that at the time of the reissuance of the stock in Quarles's two corporations, Quarles had been sued by the plaintiffs to recover $50,000.00. He had also been sued in Texas for $11,725.00. The evidence was that there was no consideration paid by Mrs. Quarles for the transfer of stock. In fact, the evidence was that she was unaware of the transfer and reissuance of the stock certificates until well after the date on which they occurred. And finally, and perhaps most significantly, Mr. Quarles retained an interest in the stock as the certificates were reissued in his name and his wife's name as joint tenants with rights of survivorship. The evidence offered by the defendants to overcome the *prima facie* case of fraud was primarily the testimony of Mr. Quarles. He testified that he had the stock reissued in their joint names because of concern for his health and for estate planning purposes. He also testified that he was not insolvent at the time the stock was reissued. His only evidence of his solvency, other than his testimony, was a copy of an undated amended U. S. individual tax return for the year 1988 indicating that he paid federal income tax in excess of $60,000.00 for the year 1988 on a reported adjusted gross income of $322,057.00. There were also two financial statements that Quarles prepared in May of 1992 purporting to show his assets and liabilities as of September, 1988, and again as of March, 1990. However, this

evidence is of questionable value given the other evidence and the testimony of Mr. Quarles. For example, he testified that the financial statement that he prepared purporting to show his net worth as of September, 1988, should have included the value of a drawing package for an airplane that he eventually donated to the Smithsonian Institute that had a value in excess of $3,000,000.00. Mr. Quarles testified that he "overlooked" this item when he prepared his financial statement. He offered no evidence to corroborate this gift or its value. Indeed, most, if not all, of his testimony was uncorroborated.

Mr. Quarles testified not only during this hearing, but other testimony given by Mr. Quarles was introduced into evidence in this case. He testified in response to debtor interrogatories in January of 1992. He was deposed in September of 1992. After reviewing that testimony, this Court could not find credible explanations for Mr. Quarles' financial affairs during 1989 or 1990.

Assuming that this court did accept Mr. Quarles's testimony that the stock transfers were made for estate planning purposes and out of concern for his health, I still conclude that the evidence when viewed as a whole is not sufficient to overcome the *prima facie* case of fraud. While protecting assets from probate might have been on Mr. Quarles's mind, I also find that the evidence compels a finding that an equal, if not more important, consideration was to protect the assets of the two corporations from creditors who had filed suit against him.

The evidence is even stronger with regard to the two deeds signed by Mr. Quarles in March of 1990. In February of 1990, the Fifth Circuit Court of Appeals had affirmed a judgment against Quarles in Texas and had remanded the case back to the Federal District Court to determine costs to be assessed against Quarles that would be over and above the $11,725.00 judgment. Moreover, the testimony of Mrs. Quarles and Quarles's attorney at the time, Lloyd J. Snook, III, supports the conclusion that the deed prepared by Mr. Snook for Mr. and Mrs. Quarles was done at least in part to hinder, delay, or defraud Mr. Quarles's creditors.

For the same reasons, the evidence is insufficient to overcome the *prima facie* case with regard to the March 22, 1990, deed transferring the Cherry Avenue lots from Mr. Quarles to Mr. and Mrs. Quarles as tenants by the entirety. The same badges of fraud coupled with the absence of credible evidence by the defendants to explain the transaction is sufficient to set the conveyance aside.

Accordingly, the Court finds the evidence to be sufficient to grant the relief requested by the plaintiffs. Each of the four conveyances shall be deemed void as to those creditors who were parties to this proceeding. As to the plaintiffs' request for attorney's fees, that request is denied.