# CIRCUIT COURT OF THE CITY OF NORFOLK

Square Deal
Demolition, Inc., et al.

v.

Josephus Doxie
and Vanessa Joyner

January 10, 2008

Case No. CL07-1203

BY JUDGE JOHN C. MORRISON, JR.

This case came before the Court for trial on the 8th day of November 2007 to determine ownership of 100 shares of stock in Square Deal Demolition, Inc. (hereinafter, "Square Deal"). At the conclusion of trial, the Court asked counsel each party to prepare written memoranda in support of their respective positions. I have reviewed the pleadings and the memoranda submitted by the parties and have considered the arguments presented by counsel for both parties. The following will set forth my ruling.

*Background*

The parties in this case are as follows. The Plaintiffs are Square Deal, the Estate of Aron Doxie, and three of his children, Teresa Hassell, Kenneth Doxie, and Thomas Doxie. The Defendants are Aron Doxie's son Josephus Doxie (hereinafter, "Josephus Doxie" or "Defendant") and Vanessa Joyner.

Aron Doxie formed Square Deal in 1981. At that time, Aron Doxie retained 100 shares of stock in the corporation, and Norma Lee Lawrence received ten shares. Defendant, Vanessa Joyner, inherited Norma Lee Lawrence's ten shares of stock; ownership of these shares are not at issue in this ruling. Both stockholders "were members of the board of directors and Aron Doxie was the President of the Corporation." (Def.'s Br. 2.) Square Deal purchased property on "Gazel Street" in Norfolk, which was used to operate the company's demolition business. Aron Doxie also allowed his son, Josephus Doxie, to operate his business, Tidewater Disposal Service, on the property. Eventually Josephus Doxie began living on the property. On December 31, 2003, the State Corporation Commission (hereinafter, "SCC") terminated Square Deal's status as a corporation due to its "failure to maintain a registered agent and office." (Pls.' Br. 2.)

On February 8, 2005, Josephus Doxie and Aron Doxie went to the offices of Ira Steingold, Esq., the prior registered agent for Square Deal. *Id.* at 3. At that meeting, Aron Doxie "signed the back of his certificate for 100 shares of Square Deal Demolition" and transferred the stock to Josephus Doxie. At trial, Steingold testified "it was his impression that the transfer was being made in order to prepare Aron Doxie's finances in the event of the need for nursing home care or assistance from Medicaid." *Id.* at 3. Steingold testified that he prepared a document to recite the amount of consideration for the transfer and suggested that the Doxies "visit the accountant in order to determine the value." *Id.* However, Josephus Doxie testified "he had no knowledge of the form or of the instruction, except the need to get the taxes straight." (Def.'s Resp. Br. 2.)

On June 8, 2005, Aron Doxie executed his will, leaving all his property, business and personal, to his living children. *Id.* at 2-3. Plaintiffs allege that Aron Doxie "named his business at that time as 'Square Deal'." (Pls.' Br. 4.) The Defendant argues there was no evidence presented at trial that Aron Doxie specifically stated that Square Deal was his business. (Def.'s Resp. Br. 3.) Furthermore, the Defendant claims that, although the Plaintiffs testified that Square Deal was his only business, the existence of other business property was brought out at trial. *Id.*

On October 13, 2005, Kenneth Doxie filed paperwork with the SCC "reinstating the corporation, and naming himself as 'Interim' President and CEO." (Def.'s Br. 3.)

On January 3, 2006, Aron Doxie was declared incompetent, and, on April 28, 2006, Aron Doxie died. *Id.* Teresa Hassell, the executor of his estate, "paid bills for the clean up of the yard [and]. . . listed the Square Deal property for sale." (Pls.' Br. 4.) According to her testimony at trial, her brothers had

"full knowledge of these actions" and "Josephus made no complaint until the realtor appeared to place the sign on the property, at which time he began chaining the gate to the yard and would not admit his siblings or the realtors." *Id.*

Thereafter, this suit was filed to determine ownership of Aron Doxie's 100 shares in Square Deal. Plaintiffs assert that the transfer of stock from Aron Doxie to Josephus Doxie was not a valid transfer or gift; therefore, "the stock and company it represented remained the property and became an asset of the Estate of Aron Doxie." *Id.* at 9-10. Defendants claim that the transfer was valid and the stock belongs to Josephus Doxie.

The Court's opinion will address the following issues: (i) whether Aron Doxie's transfer of stock on February 8, 2005, was valid; and, if so, (ii) whether the stock transfer was valid despite the terminated status of the corporation.

## Analysis

### 1. Whether Aron Doxie's Transfer of Stock on February 8, 2005, to Josephus Doxie Was Valid

The elements of an *inter vivos* gift are: "(1) The gift must be of personal property; (2) possession of the property must be delivered at the time of the gift to the donee or some other for him and the gift must be accepted by the donee; and (3) the title of the property must vest in the donee at the time of the gift." *Young v. Young*, 240 Va. 57, 63, 393 S.E.2d 398, 401 (1990). Furthermore, "the gift is effective only if the donor has donative intent at the time of the gift and if there is 'such actual or constructive delivery as divests the owner of all dominion and control over the property and invests it in the donee'." *Id.* (quoting *Taylor, Adm'x v. Smith*, 199 Va. 871, 874, 102 S.E.2d 160, 162-63 (1958)).

The burden is upon the donee to establish the gift. *Grace v. Virginia Trust Co., Adm'r*, 150 Va. 56, 66, 142 S.E. 378, 381 (1928). In *Grace*, the Supreme Court held, "[m]ere motive . . . will not establish a gift. . . . Whether or not a gift has been made is dependent upon facts and circumstances of a particular case." *Id.* Additionally, "if the donor is dead at the time the gift is asserted, the fact of the gift cannot be established by uncorroborated testimony of the donee." *Id.* (citation omitted).

The Plaintiffs argue that Aron Doxie did not make a completed gift of his ownership of Square Deal, and, therefore, the Norfolk property remained his and passed to his Estate. Specifically, the Plaintiffs claim that the elements

of a gift are not met. The Defendants did not prove a "clear and unmistakable intention on the part of the donor to make a gift of the property." (Pl.'s Br. 8.) There is no proof of delivery and acceptance because "the stock certificate was not produced" and "no overt actions were taken to control the stock, business, or real property until following the death of Aron Doxie." *Id.* at 8. There was no proof that Aron Doxie gave up control of the gift at the time it was made because he "stated his business as 'Square Deal' at the time of the making of his will and did not relinquish control of anything until his mental and physical health deteriorated . . . in January 2006." *Id.*

In support of their argument, the Plaintiffs cite various cases, including *Grace* and *Swan v. Swan's Ex'r*. In *Grace*, the plaintiff claimed that the decedent had given her the key to a bank safe deposit box containing liberty bonds and stated "the liberty bonds in the box are yours." 150 Va. at 62-63, 142 S.E. at 379-80. However, she never went to the bank to get the liberty bonds prior to the decedent's death. *Id.* At some point, the decedent instructed the bank's vice president "in the event of his death, to notify his son . . . and deliver to him the contents of the box." *Id.* at 61-62, 142 S.E. at 379. The Court did not address "the sufficiency of the delivery [of the key] to constitute a completed gift" but found that the plaintiff's testimony was "not corroborated by the evidence offered on her behalf." *Id.* at 72, 142 S.E. at 381-82.

In *Swan*, the decedent, Lewis H. Swan, assigned to the plaintiff stock in his company and transferred her name on the books of the company. *Swan v. Swan's Ex'r*, 136 Va. 496, 519-20, 117 S.E. 858, 865 (1923). There was no consideration for this transfer. *Id.* Furthermore, "neither [the plaintiff nor Mr. Swan] nor anybody else connected with him in the business ever considered that [the plaintiff] was the owner of it." *Id.* The stock "was always voted in [Mr. Swan's] name, and every corporate action and every entry on the corporation books showed that the stock was his. Its surplus earnings were set apart to his credit; all the dividends on the stock were paid to him." *Id.* In light of those facts, the Court ruled that there was no valid *inter vivos* gift of the stock. Specifically, the Court held:

> it is quite possible and often happens, for reasons of convenience or otherwise, that stock held in the name of one person really belongs to another. In such a case the certificate, though *prima facie* evidence of ownership in the person to whom it has been issued, possesses no such magic or sacredness as to prevent an inquiry into the facts. Sometimes the transferee is merely a nominal holder or "dummy," and in that event, although the

transfer may be perfectly regular and complete on its fact, the true ownership remains in the transferor, and that fact may be shown.

*Id.* at 519, 117 S.E. at 865 (citation omitted).

The Defendant, however, claims that the transfer of stock was valid. In support of his argument, the Defendant cites the statutory language regarding the transfer of a certificated security.[1] Under § 8.8A-304 of the Code, an endorsement of a certificated security does not constitute a transfer "until delivery of the certificate on which it appears, or, if the endorsement is on a separate document, until delivery of both the document and the certificate." Va. Code Ann. § 8.8A-304 (2007). An endorsement is "a signature that alone or accompanied by other words is made on a security certificate in registered form or on a separate document for the purpose of assigning, transferring, or redeeming the security. . . ." Va. Code Ann. § 8.8A-102(11) (2007). Delivery occurs when "the purchaser acquires possession of the security certificate." Va. Code Ann. § 8.8A-301 (2007). A purchaser is "a person who takes by purchase," which includes taking by gift. Va. Code Ann. § 8.1A-201(30), (31) (2007).

The Defendant claims that these elements are met because Aron Doxie told Steingold he wanted to transfer the stock to Josephus Doxie; Steingold told him "how to fill out the endorsement;" and after endorsing the certificate, "Aron . . . gave it to Josephus who walked out of the office with the certificate." (Def.'s Resp. Br. 4.)

Finally, the Defendant addresses the other arguments raised by the Plaintiff. First, the Defendant claims that the Plaintiffs' contention that Aron Doxie made the transfer only for Medicaid purposes is not a proper legal basis to set aside the transfer. (Def.'s Br. 10.) Furthermore, the Defendant claims that the Medicaid issue was never raised by Aron Doxie himself, but by his children. (Def.'s Resp. Br. 7.) Second, the Defendant makes a distinction between "ownership of stock versus control of the corporation." Defendant claims, "it is the directors and officers, and not the stockholders who run a company." *Id.* at 2. Therefore, as stockholder, it was not Josephus Doxie's duty to run the business because Aron Doxie retained management of the company. *Id.* at 8.

---

[1] The common law requirements for a gift are not changed by the statutory requirements under Va. Code § 8.8A-304 (2007). *See, Young v. Young*, 240 Va. 57, 63, 393 S.E.2d 398, 401 (1990) ("[T]he common law requirements of delivery and acceptance are not removed by those provisions of the Uniform Commercial Code pertaining to the transfer of securities.") (citation omitted).

The Court agrees with the Defendant and finds that there was a valid transfer of stock on February 8, 2005. The steps taken in Mr. Steingold's office satisfy the requirements for both an *inter vivos* gift and the transfer of a certificated security. Aron Doxie made a gift of personal property, stock; the stock was delivered to the donee, Josephus Doxie, and he accepted the stock, and title vested in the donee at the time of the gift because Aron Doxie endorsed the certificate. The facts in *Swan* and *Grace* can be distinguished because (i) Josephus Doxie's claims are corroborated by the testimony of Steingold and (ii) there is no indication that Josephus Doxie was intended to be a "nominal holder or dummy" because there is no evidence that Aron Doxie ever asserted dominion and control over the *stock* after the transfer. *See, Swan*, 136 Va. at 519, 117 S.E. at 865. Finally, there does not appear to be any fraud, coercion, or undue influence that would otherwise invalidate the transfer.

Therefore, the only remaining issue is whether Aron Doxie could transfer his stock if the corporation was not in good standing with the SCC at the time of the transfer.

## 2. Whether the Stock Transfer Was Valid Despite the Terminated Status of the Corporation

The Defendant addresses three questions under this issue: "(1) did the fact that the corporation's existence had been terminated at the time of the stock transfer affect the validity of the transfer, (2) what effect did the subsequent reinstatement have on the transfer, and (3) what difference does it make, if any, that the reinstatement was done by Kenneth Doxie, a stranger to the corporation?" (Def.'s Br. 4.) Although the Plaintiffs orally argued this issue at trial, their Brief states that the Court does not need to reach this issue. (Pls.' Br. 8.) I will address the three issues raised by the Defendant.

### a. Did the Fact That the Corporation's Existence Had Been Terminated at the Time of the Stock Transfer Affect the Validity of the Transfer?

Under Va. Code Ann. § 13.1-753(A) (2007):

The corporate existence of a corporation may be terminated involuntarily by order of the Commission. . . . Upon termination, the properties and affairs of the corporation shall pass automatically to its directors as trustees in liquidation. The trustees then shall proceed to collect the assets of the

corporation; sell, convey, and dispose of such of its properties as are not to be distributed in kind to its shareholders; pay, satisfy, and discharge its liabilities and obligations; and do all other acts required to liquidate its business and affairs. After paying or adequately providing for the payment of all its obligations, the trustees shall distribute the remainder of its assets, either in cash or in kind, among its shareholders according to their respective rights and interests.

The Defendant argues that, as a shareholder, Aron Doxie had the right to transfer his stock even though the corporation's existence had been terminated. Under the statute, stockholders "retain the right to ultimately receive property owned by the corporation once creditors have been satisfied." (Def.'s Br. 5.) According to the Defendant, this means that stockholders have "something of value to transfer" even though the corporation's status has been terminated. *Id.* Therefore, Aron Doxie should have the right to transfer this expectation of future distribution. *Id.*

The Court finds that Aron Doxie has the right to transfer his stocks even though the corporation's existence has been terminated. According to the plain language of the statute, it does appear that Aron Doxie had an expectation of future distribution, and there is no evidence of a provision in Square Deal's articles of incorporation or bylaws or an agreement imposing restrictions on the transfer of its shares. *See* Va. Code § 13.1-649(A) (2007). Therefore, Aron Doxie should be able to transfer his shares to Josephus Doxie.

b. *What Effect Did Subsequent Reinstatement Have on the Transfer?*

Under Va. Code Ann. § 13.1-754 (2007):

A corporation that has ceased to exist may apply to the Commission for reinstatement within five years thereafter. . . . The Commission shall enter an order reinstating the corporate existence upon receiving [the necessary filings and fees]. . . . Upon the entry by the Commission of an order of reinstatement, the corporate existence shall be deemed to have continued from the date of termination of corporate existence, and any liability incurred by the corporation or a director, officer, or other agent after termination of corporate existence and before the reinstatement shall be determined as if the termination of corporate existence had never occurred.

The Defendant argues that, so long as the reinstatement is effective, the corporation should be treated as though it never terminated. Therefore, the stockholder was free to transfer the stock to his son, making Josephus Doxie the owner of the stock upon reinstatement. *Id.* at 6. *See, In re Wine Farms, Inc.*, 94 B.R. 410, 413, 1988 Bankr. LEXIS 2188, at *8 (Bankr. W.D. Va. 1988) ("[T]he Virginia legislature intended that, once a corporation achieves reinstatement, its corporate status relates back to the date of its termination and it is as if the corporation had never been terminated.").

The Court agrees that Aron Doxie was free to transfer his stock, and upon reinstatement, Josephus Doxie became owner of the stock. The statute is clear, and the case law reinforces the principle that, upon reinstatement, the corporation is deemed to have continued from the date of termination of corporate existence. In this case, the corporation was terminated on December 31, 2003, and reinstated on October 13, 2005. This is within the five-year period set forth in statute. As long as the reinstatement was otherwise effective, Square Deal should be treated as if it had never been terminated.

c. *What Difference Does It Make, If Any, That the Reinstatement Was Done by Kenneth Doxie, a Stranger to the Corporation?*

The Defendant argues, the fact that Kenneth Doxie reinstated the corporation has no effect on the validity of the reinstatement because (i) the Plaintiffs failed to contest the SCC's decision to reinstate the corporation's existence; (ii) the statutory language regarding who may apply for reinstatement is not exclusive; and (iii) the Plaintiffs are estopped from arguing that the reinstatement was not effective due to the actions of Kenneth Doxie.

Under Va. Code Ann. § 13.1-614(A) (2007), after the SCC has issued a certificate, a shareholder has ten days to file a petition with the SCC and the corporation to challenge the issuance of the certificate. Furthermore, only the Supreme Court, on appeal, has jurisdiction to "review, reverse, correct, or annul any action of the [SCC], within the scope of its authority, with regard to articles, certificate, order, objection, or petition. . . ." Va. Code Ann. § 13.1-614(B) (2007). The Defendant argues that this provision prohibits this Court from reviewing the decision of the SCC because the SCC issued an Order of Reinstatement on October 13, 2005, and no hearing was held by the Commission to review that decision within the statutory period; therefore, the SCC action is final and not subject to judicial review. (Def.'s Br. 6-7.)

Next, the Defendant notes that, under the Code, "[t]he application for reinstatement *may* be by letter signed by an officer or director of the corporation, or *may* be by affidavit signed by an agent of any shareholder's interest stating that after diligent search by such agent no officer or director can be found." Va. Code § 13.1-754 (2007) (emphasis added). Defendants argue that "the word 'may' when referring to the list of people who can apply for reinstatement" is not a direct bar to "its being done another way." (Def.'s Br. 7.)

Finally, the Defendant argues that the Plaintiffs should not be allowed to take inconsistent positions. The Defendant notes that the person who supposedly acted "against the statute" is Kenneth Doxie, one of the Plaintiffs. *Id.* at 7. Additionally, the actions taken by Kenneth Doxie to reinstate the corporation had "the apparent sanction of the other Plaintiffs." *Id.* at 8. Defendant argues that the Plaintiffs should be estopped from "chang[ing] their position to something logically inconsistent with everything they have said and done before now and claim the company is not validly reinstated and Kenneth Doxie is not the 'Interim CEO' as the paperwork states." *Id.*; *see also, Thrasher v. Thrasher*, 210 Va. 624, 172 S.E.2d 771, 773 (1970) ("[A] party cannot assume positions which are inconsistent with each other and mutually contradictory.").

The Court finds that, although Square Deal was reinstated due to the actions of Kenneth Doxie, a stranger to the corporation, that fact does not invalidate the reinstatement. The SCC has issued Orders of Reinstatement on two occasions, yet none of the parties purporting to be shareholders have sought to challenge the SCC's actions.[2] This implies that the parties do not object to the validity of the reinstatement. *See, Farmers & Merchs. Nat'l Bank v. Commonwealth*, 213 Va. 401, 404, 192 S.E.2d 744, 747 (1972) ("[A] a presumption of correctness still attaches to actions of the Commission."). Therefore, the SCC action is final and this Court does not have jurisdiction to review the Order of Reinstatement issued by the SCC.

---

[2] Square Deal was originally reinstated on October 13, 2005, but was terminated again in January 2007. In February 2007, Kenneth Doxie again reinstated the corporation. (Def.'s Br. 7.)

## Conclusion

For the reasons stated herein, the Court rules in favor of the Defendants and finds that there was a valid transfer of Aron Doxie's 100 shares of stock to Josephus Doxie on February 8, 2005. The corporation's terminated status had no effect upon the transfer; and, upon reinstatement, Josephus Doxie was the owner of Aron Doxie's 100 shares of stock in Square Deal.