**Richmond**

BAXCETTA A. PRICE

v.

STEVEN PRICE

No. 1588-85

STEVEN PRICE

v.

BAXCETTA A. PRICE

No. 1592-85

Decided May 5, 1987

COUNSEL

Donald K. Butler (Morano, Colan & Butler, on brief), for Baxcetta A. Price.

Robert N. Johnson (Anne M. Johnson, Robert N. & Anne M. Johnson, Incorporated, on brief), for Steven Price.

OPINION

**HODGES, J.** — On July 19, 1983, Baxcetta Price filed a bill of complaint for a divorce from Dr. Steven Price, her husband, on the grounds of cruelty and constructive desertion. On April 19, 1984, Mrs. Price was awarded a divorce *a mensa et thoro* with the issue of equitable distribution of property being referred to a commissioner in chancery for determination and recommendations. The commissioner filed his report on January 8, 1985, to which each party noted their exceptions.[1] The court modified the recommended allocation of the marital residence, but in all other regards adopted the commissioner's findings and recommendations and entered a final decree of divorce on November 19, 1985.

The property allocation proposed by the commissioner would have awarded Dr. Price a money judgment of $15,022.65, and allowed him to retain certain items of property already in his possession valued at $43,063.88. Mrs. Price, on the other hand, would have retained the marital home, in which the parties had equity valued at $97,692.66, as well as $13,632.35 in personal property in her possession. The commissioner recommended that Mrs. Price receive 67.54% of the total value of the marital property and Dr. Price receive 32.46%. The trial court rejected this recommendation and, in effect, reduced the total percentage of the marital property allocated to Mrs. Price to 56.36%, leaving Dr. Price 43.64%. The adjustment was accomplished by allocating more of the value of the marital home to Dr. Price, thereby increasing the amount of the award to be paid to him by Mrs. Price. In addition, the court awarded Mrs. Price $600 per month spousal support.

Both parties contend that the court erred in entering the final decree of divorce. Dr. Price alleges that the court erred by includ-

---

[1] The report was based on evidence heard *ore tenus* on September 12, 1984, and on depositions taken prior to the decree of reference.

ing as marital property the value of his retirement fund and items he purchased after the parties separated. He also challenges the values assigned some items of marital property and asserts that the court erred in awarding spousal support. Mrs. Price contends that the court erred in not adopting the commissioner's recommendation in regard to the amount of the monetary award to be paid by her to Dr. Price and in not granting her additional attorney fees.

The commissioner's report, based on evidence *ore tenus* and depositions, was submitted to the court on January 8, 1985, and contained the findings of fact and recommendations for relief.

Generally, a commissioner's report should be affirmed by the chancellor unless the findings are not supported by the evidence. *Hodges v. Hodges*, 2 Va. App. 508, 514, 347 S.E.2d 134, 137-38 (1986). When the chancellor disapproves the commissioner's findings, on appeal we must review the evidence and ascertain whether upon a correct application of the law the evidence supports the findings of the commissioner or the conclusions of the trial court. *Id.* However, when a court refers a case to a commissioner in chancery, it does not delegate its judicial functions to the commissioner, and is not bound by the commissioner's recommendations. "Rather, the court must review the evidence, apply the correct principles of law, and make its own conclusions as to the appropriate relief required." *Dukelow v. Dukelow*, 2 Va. App. 21, 26-27, 341 S.E.2d 208, 211 (1986).

We agree that the monetary award determination was erroneous in certain respects and remand for further proceedings. The court adopted almost entirely the report of the commissioner, and much of our discussion necessarily centers around errors committed by the commissioner and adopted by the court.

We will not address Dr. Price's complaint concerning spousal support since that issue must be redetermined after a proper monetary award decision has been made. *See* Code §§ 20-107.1(8) and 20-107.3(F); *Morris v. Morris*, 3 Va. App. 303, 311, 349 S.E.2d 661, 665 (1986).

## I. CLASSIFICATION AND VALUATION

■ The commissioner classified as marital property Dr. Price's pension fund and certain other items of real and personal property purchased by Dr. Price after the separation of the parties. The commissioner included the following assets as marital: a personal computer, a money market account, a radio, a television, and equity in a house in Vienna, Virginia, which Dr. Price bought with a third party. While it was proper to classify the pension fund as marital property, the commissioner recommended an improper mode of payment. The items acquired after the last separation should not have been included as marital assets absent a showing by Mrs. Price that marital assets were used to purchase them. The burden of proving that property purchased after the last separation is marital is on the proponent and we hold that the presumption that property is marital ceases on the date of the *de facto* dissolution of the marital partnership.

■ In making a monetary award determination, courts are faced initially with a two-fold problem: the proper date for classification of marital property *and* the proper date for valuing the marital property. The two dates are not necessarily the same since the factors involved in the selection of one may not be involved in the selection of the other.

### A. CLASSIFICATION

The law in effect when the suit was filed read: "Marital property is (i) all property titled in the names of both parties, whether as joint tenants, tenants by the entirety or otherwise, and (ii) all other property acquired by each party during the marriage which is not separate property as defined above. *All property acquired by either spouse during the marriage is presumed to be marital property in the absence of satisfactory evidence that it is separate property.*" Code § 20-107.3 (A)(2) (emphasis added). In 1984 the General Assembly amended the statute to read in pertinent part: "All property acquired by either spouse during the marriage, *and before the filing of a bill of complaint stating a ground for divorce*, is presumed to be marital property in the absence of satisfactory evidence that it is separate property." (emphasis added). The General Assembly amended the statute again in 1986 and it currently reads: "All property . . . acquired by either spouse dur-

ing the marriage, *and before the last separation of the parties, if at such time or thereafter at least one of the parties intends that the separation be permanent*, is presumed to be marital." (emphasis added). The language setting out the marital property presumption affords some guidance to the classification date problem but does not address the valuation date question.

■ The 1984 amendment limiting the application of the presumption to the period before the filing of the bill of complaint is not applicable to this suit. "[W]hen a statute is amended while an action is pending, the rights of the parties are to be decided in accordance with the law in effect when the action was begun, unless the amended statute shows a clear intention to vary such rights." *Washington v. Commonwealth*, 216 Va. 185, 193, 217 S.E.2d 815, 823 (1975) (citing *Burton v. Seifert Plastic Relief Co.*, 108 Va. 338, 350-51, 61 S.E. 933, 938 (1908)). Nothing in the 1984 amendment indicates that the General Assembly intended the amendment to apply to actions filed before the effective date of the amendment.

Prior to adoption of Code § 20-107.3 in 1982, Virginia was one of a few states which still determined property rights upon divorce based upon a determination of who held the "legal" title to the property, rather than viewing the assets acquired during the marriage as similar to property acquired by a partnership, shared enterprise, or a joint undertaking. 24 Am. Jur.2d *Divorce and Separation* § 870 (1983).[2] Viewing the enactment of the statute as an adoption of the view that marriage is a partnership of two individ-

---

[2] The statute in effect prior to the enactment of the property allocation statute, § 20-107, read as follows:

Court may decree as to estate, maintenance and support of the parties, custody of children and resumption of former name . . . . The court may make such further decree as it shall deem expedient concerning the estate and the maintenance and support of the parties . . . The word "estate" as used in this section shall be construed to mean only those rights of the parties created by the marriage in and to the real property of each other . . . The court shall, in determining such support and maintenance for the spouse . . . consider the following:

(1) The earning capacity, obligations and needs, and financial resources of the parties;

(2) The education and training of the parties and the ability and opportunity of the parties to secure such education and training;

(3) The standard of living established during the marriage;

(4) The duration of the marriage;

(5) The age, physical and mental condition of the parties;

(6) Such other factors as are necessary to consider the equities between the parties.

uals who have joined forces to benefit the union,[3] it is evident that when the partnership ceases to work for the common good the marriage is for all practical purposes over. By enacting Code § 20-107.3 the General Assembly enabled the divorce courts to recognize the contributions made by both parties to the marriage, whether monetary or non-monetary, when considering division of their property upon the dissolution of a marriage.

By initially not specifically designating in Code § 20-107.3 when property was to be classified as marital or separate, we believe the silence of the General Assembly evinced an intention to leave such determination to the courts. While the statutory amendments made in 1984 and 1986 are not applicable or controlling, they do not now restrict the exercise of that discretion which the legislature had earlier conferred other than to limit application of the presumption to the period before the filing of the bill of complaint (1984 amendment) or the period before the last separation of the parties (1986 amendment).

In this case, Dr. Price acquired some of the property included in the monetary award determination after the date of the filing of the bill of complaint and following the last date of separation. The chancellor adopted the date of the commissioner's hearing as the most appropriate date for purposes of both classification and valuation of the marital property. We conclude that under the circumstances it was erroneous for the trial court to select a classification date which included as marital property that which was acquired by the husband without the exchange or pledge of marital assets after the *de facto* dissolution of the marriage partnership.

We believe that in most cases the appropriate date for classification purposes would be the date of last separation.[4] The statute being silent prior to 1984 as to when the marriage was considered to have ended for purposes of classifying property, we hold that the language "during the marriage" means the period ending

---

[3] *See* Report of the Joint Subcommittee Studying Section 20-107 of the Code of Virginia to the Governor and the General Assembly of Virginia, House Doc. No. 21, at 7 (1982).

[4] *Parra v. Parra*, 1 Va. App. 118, 127, 336 S.E.2d 157, 162 (1985), indicated that the filing of the bill of complaint would be the cut-off date for the marital property classification presumption. The classification date question was *not* raised on appeal in *Parra*. Therefore, we view that language as dictum which in no way controls our decision here.

on the last separation date.[5] The inclusion of the real and personal property purchased after the date of last separation was reversible error since no evidence was proffered to show use or encumbrance of marital assets for its purchase.

## B. VALUATION

■ Use of the commissioner's hearing date for *valuation* of the marital property was not error under the facts of this case. No specific date was designated by the legislature for valuation of marital property.[6] The evidentiary hearing date or trial date may be the most practical and suitable valuation date in most instances. We recognize, however, that this date may not always be the most appropriate since both fortuitous or intentional events can drastically affect values and equities between date of classification and valuation, and courts should have the discretion to adopt a different date if the equities of the case demand it.

## II. DR. PRICE'S PENSION

As noted earlier, the commissioner included the value of Dr. Price's pension as a marital asset. The commissioner used a valuation date of July 1, 1984 for the pension fund and assigned a value of $33,506.03 to it. This figure was derived from an exhibit submitted by Mrs. Price during testimony given by Herbert Council, a personnel manager at Virginia Commonwealth University, Dr. Price's employer. Another exhibit offered at the same time indicated that the pension fund's value as of December 31, 1983, was $32,242.58.

Dr. Price contends that the court's classification of his pension fund as marital property was error for two reasons: first, the court erred by including the pension fund in the general marital assets rather than determining Mrs. Price's interest in the fund sepa-

---

[5] *See generally* L. Golden, *Equitable Distribution of Property* §§ 5.13-5.15 (1983).

[6] Three dates have been generally used for valuation purposes: the date of last separation, the date of trial, or the date of entry of the final divorce decree. In some instances the court might exercise its discretion and choose the date of last separation or the date of final decree for valuation purposes based upon the particular circumstances of the case. For a discussion of the advantages and disadvantages of each. *See generally* L. Golden, *Equitable Distribution of Property* §§ 7.02-7.04 (1983); Annot. 34 A.L.R. 4th 63 (1984).

rately from the non-pension fund marital assets;[7] and second, an incorrect valuation date was employed: the date of the commissioner's hearing rather than the date of the parties' separation. Dr. Price contends that the fund's value at the time of the parties' separation should have been used and not its value on the date of the commissioner's hearing, which was almost a year after the separation.

 It is clear that the pension fund is within the definition of marital property since it was acquired during the marriage and is not separate property as defined in Code § 20-107.3. *See Sawyer v. Sawyer*, 1 Va. App. 75, 79, 335 S.E.2d 277, 280 (1985). As noted in *McGinnis v. McGinnis*, 1 Va. App. 272, 338 S.E.2d 159 (1985), the statute does not authorize direct payment of a percentage of the pension benefits independent of the monetary award *but* "[t]he present value of such benefits . . . [is] one of the various factors to be considered in determining the amount of the award." *Id.* at 276, 338 S.E.2d at 161. In this case it is clear that the commissioner's award recommendation was based on a general pooling of all the marital assets, including the pension fund. The statute, however, specifically states that "[n]o part of any monetary award based upon the value of pension or retirement benefits . . . shall become effective until the party against whom such award is made actually begins to receive such benefits. No such award shall exceed fifty percent of the cash benefits actually received by the party against whom such award is made." Code § 20-107.3(G).[8] On remand, any award granted must comply with this statutory restriction.

> The practical effect of Subsection (G) is that the trial judge must specify separately any part of the monetary award that is based upon pension or retirement benefits and make special provisions for the payment of it in order to conform with the payment restrictions.

*Mitchell v. Mitchell*, 4 Va. App. 113, 121, 355 S.E.2d 18, 23 (1987).

---

[7] In 1985, the General Assembly amended the definition of "Marital Property" to specifically include pensions, profit-sharing or retirement plans. Code § 20-107.3(A)(2).

[8] Code § 20-107.3(G) was amended in 1985.

Dr. Price's contention that the proper valuation date was the date of last separation is erroneous. The proper valuation date is the same as other marital property and is within the court's sound discretion as discussed previously. Therefore, the court did not err in this regard.

## III. THE MARITAL HOME

Baxcetta Price complains that the trial court should not have altered the commissioner's recommendation that she pay an award to Dr. Price of $15,022.65. The court ordered Mrs. Price to pay Dr. Price $35,022.65 within six months after entry of the decree, and ordered Dr. Price to execute and deliver a general warranty deed for the marital home to Mrs. Price. She in turn was to convey the property by deed of trust to the parties' respective attorneys as trustees to serve until the judgment was satisfied. The parties held title to the marital home as tenants by the entireties with right of survivorship as at common law.

The commissioner's recommendation was based in part upon the following: "Mrs. Price indicated that she would prefer to remain in the residence. This is a concession which should be made in the interest of fairness and equity. . . . It is further recommended that Dr. Price relinquish his interest in the marital residence and convey his interest directly to Mrs. Price." The court's adoption of the commissioner's recommendation that Dr. Price convey the title to the marital home to Mrs. Price was error. There was no agreement between the parties concerning the transfer of title to the real estate and absent such agreement the court was restricted to partitioning the real estate titled in both parties' names, if so requested by the parties. Code § 20-107.3(C). There was no such request here and the court did not have authority to order the conveyance. *Morris v. Morris*, 3 Va. App. 303, 309-10, 349 S.E.2d 661, 664-65 (1986); *Venable v. Venable*, 2 Va. App. 178, 185, 342 S.E.2d 646, 650 (1986).

## IV. OTHER PROPERTY

Dr. Price argues that the court incorrectly valued a ring which his wife had remounted, and a checking account in Mrs. Price's possession. He also complains that the commissioner improperly classified as separate property other property in Mrs. Price's

possession.

The commissioner refused to classify as a marital asset the retirement benefits that Mrs. Price had accumulated during her employment at a bank. He excluded the benefits because they were unvested; however, the statute clearly states that the present value of pension or retirement funds should be considered, *whether vested or not*, when determining an equitable award. Code § 20-107.3(E)(8). All such funds must be included regardless of their amount or nature and it was error not to do so.

It was also error not to include as marital property bank account funds accumulated by the parties during the marriage but expended by Mrs. Price after the date of separation. The commissioner's report stated: "After considering the testimony of the parties and the circumstances in which they found themselves at time of separation, the intangible factors present as a result of the separation, and the other equities between the parties, your commissioner allowed an adjustment of $3,120 to Mrs. Price, which would include payment of $620 to her accountant, $500 towards additional attorney's fees, and approximately $2,000 allocated to the immediate support for herself and daughter." This was not proper. The bank account should have been included in full to the extent that it contained funds accumulated during the marriage. While consideration of the factors stated by the commissioner might be proper when the court is determining the *amount* of a monetary award, neither the commissioner nor the court had the authority to "adjust" what was marital property.

Additionally, error was committed in assignment of $40 value to a ring in Mrs. Price's possession. The ring was "created" in January of 1983, prior to the parties' separation, by remounting stones from two rings: an engagement ring given to Mrs. Price prior to the parties' marriage and another given to Mrs. Price by Dr. Price after their marriage. Dr. Price attempted to testify that the value of the ring was the amount of the insurance covering the new ring. This testimony was excluded as hearsay. Mrs. Price testified that, prior to the remounting, the white gold ring with the chipped diamonds given her by Dr. Price had been appraised at $60. The commissioner classified a portion of the new ring as marital property and assigned it a value of $40.

The value of $40 was clearly insufficient. The cost of remounting was $900, which Mrs. Price paid with money from her payroll savings account. The commissioner apparently felt that the only portion of the "new" ring which constituted marital property was the appraised value of the diamond chips from the ring given her by Dr. Price. We do not know why this value was further discounted. When separate property is combined or commingled with marital property in the manner that these rings were, the separate property loses its character as separate property and the "new" property created is marital. The law in this state recognizes a presumption that property is marital and when separate and marital property are commingled to create a "new" piece of property, transmutation has occurred. The cost of the remounting was $900 which was paid for by Mrs. Price out of her payroll savings account at a time prior to the parties' separation. This account was clearly marital property. Therefore, the court erred in assigning only $40 value and a proper valuation should be made on remand.

Property allocation and monetary award determinations must be made according to the statutory scheme mandated by Code § 20-107.3. "The statute details that which must be determined in order to reach an equitable result based on the notion of a marriage partnership, and awards based on anything less, regardless of how nobly and fairly created, cannot withstand appellate review." *Hodges v. Hodges*, 2 Va. App. 508, 517, 347 S.E.2d 134, 139, (1986).

## V. ATTORNEYS' FEES

We reject Mrs. Price's complaint that the court erred by refusing to order Dr. Price to pay additional attorney fees. She employed three different attorneys between the time she filed her bill of complaint in July of 1983 and entry of the final decree on November 19, 1985.[9] Mrs. Price retained her first attorney for approximately eight months, the second for approximately four months and the third for approximately a year and a half. Dr. Price had already contributed or been ordered to pay $2,577 toward her legal fees. He argued that the continuous changing of counsel added immeasurable expense to what would have been a

---

[9] Mrs. Price switched attorneys again after the filing of the notice of appeal.

reasonable amount. An award of attorney fees is within the sound discretion of the court, *Wilkerson v. Wilkerson*, 214 Va. 395, 398, 200 S.E.2d 581, 584 (1973), and will not be disturbed on appeal absent evidence of abuse. Based upon the circumstances of this case and the amount Dr. Price had already paid, we find no abuse of discretion in the court's refusal to grant Mrs. Price an additional fee award.

Accordingly the judgment below is affirmed in part and reversed and remanded in part for further proceedings consistent with this opinion.

*Affirmed in part,*
*reversed in part,*
*and remanded.*

Koontz, C.J., and Coleman, J., concurred.