COURT OF APPEALS OF VIRGINIA


Present:  Judges Bray, Annunziata and Frank


MELVIN F. MORRIS
                                    MEMORANDUM OPINION*
v.    Record No. 0850-99-2              PER CURIAM
                                     OCTOBER 26, 1999
JUDITH HEALY MORRIS


                FROM THE CIRCUIT COURT OF SPOTSYLVANIA COUNTY
                        J. Peyton Farmer, Judge

             (Theodore J. Edlich, IV; J. Scott Kulp;
             Joseph A. Vance, IV; Williams, Mullen,
             Clark & Dobbins; Joseph A. Vance, IV &
             Associates, on briefs), for appellant.

             (Murray M. Van Lear, II; Paul A. Simpson;
             John K. Byrum, Jr.; Scott, Daltan & Van Lear;
             Hirschler, Fleischer, Weinberg, Cox & Allen,
             P.C., on brief), for appellee.


     Melvin F. Morris (husband) appeals from the final decree of

divorce entered by the Spotsylvania County Circuit Court (trial

court).  Husband contends that the trial court erred (1) by

assigning a value to Commonwealth Center, Inc. (CCI), that

exceeded husband's marital interest in the property; (2) by

ordering him to restore $29,093.50 to Meadows Mobile Home Park's

account after transferring these funds to pay a joint obligation

of the parties; (3) by finding that Judith Healy Morris (wife) did

not dissipate assets from Meadows Mobile Home Park (Meadows) and

---

     * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

Lee Hill Village Mobile Home Park (Lee Hill); (4) by finding that Preferred Brokers, Inc. (Preferred), is wife's separate property, and in its valuation of this property; (5) in awarding wife $12,226.51 in attorney's fees associated with South Carolina litigation regarding the parties' Myrtle Beach hotel; and (6) by awarding Meadows to wife. Wife contends that the appeal should be dismissed based on husband's failure to comply with Rules 5A:8 and 5A:10. Upon reviewing the record and briefs of the parties, we conclude that the appellate record is sufficient to address the issues raised by husband, but that this appeal is without merit. Accordingly, we summarily affirm the decision of the trial court. See Rule 5A:27.

## Background

The parties began co-habiting in 1962, married in 1973, and separated in March 1993. For a number of years, the parties operated several businesses together. As of the date of separation, the parties' business operations included two mobile home parks--Lee Hill and Meadows, a business entity that sold mobile homes--Jeff Davis Mobile Sales a/k/a Jeff Davis Homes, Inc. a/k/a Jeff Davis Mobile Homes, Inc. (collectively Jeff Davis), and a commercial real estate development firm--CCI. The parties also acquired, around the time they separated, a hotel in Myrtle Beach, South Carolina. The parties stipulated that the marital property should be divided evenly.

-

The trial court referred this matter to a commissioner in chancery who, in dividing the parties' marital property, awarded wife $2,934,658.70 and awarded husband $3,238,340.67 (less taxes owed on the CCI).[1] The commissioner awarded Meadows to wife, and awarded Lee Hill, Jeff Davis, and CCI to husband. The commissioner also awarded wife $12,226.51 in attorney's fees she incurred in South Carolina litigation to void a mortgage husband had placed against a hotel the parties jointly owned. The commissioner charged husband with dissipating $29,083.50 that he had withdrawn from the Meadows account to pay another obligation, but found that wife had not dissipated assets from Meadows and Lee Hill.

The commissioner found that Preferred, which wife had incorporated in 1995, was wife's separate property, and valued wife's one-half interest in that property at $36,709.59.

The trial court ruled that the commissioner had recommended a fair and just distribution of the parties' property and incorporated the commissioner's report into the final decree of divorce.

### Wife's Motion to Dismiss

Wife contends that the appeal should be dismissed pursuant to Rule 5A:8 based on husband's failure to timely file all

---

[1] The trial court ordered husband to execute a note in the amount of half the difference between the property amounts awarded the parties and to pay that amount to wife within one year.

-

transcripts from the proceedings below.  Husband concedes that there is no transcript available from the October 23, 1998 hearing before the trial court where the parties argued their exceptions to the commissioner's report.  No evidence was taken at the hearing, and husband's exceptions were preserved elsewhere in the record.  Accordingly, this transcript is not necessary for an adjudication of the issues husband has raised on appeal.  See Goodpasture v. Goodpasture, 7 Va. App. 55, 57, 371 S.E.2d 845, 846 (1988) (if the record on appeal is sufficient despite the absence of a transcript, the Court of Appeals is free to hear and resolve the case).

Wife also contends that husband violated Rule 5A:10(c) by submitting an abbreviated record without her consent.  Husband did not file transcripts from hearings held by the commissioner on August 5, 1996, September 4, 1996, October 3, 1996, November 6, 1996, December 5, 1996, February 11, 1997, April 18, 1997, May 6-7, 1997, June 5 and 25, 1997, July 30, 1997, August 13 and 20, 1997, September 26, 1997, and October 2, 6 and 15-16, 1997.  Husband responds that the transcripts filed as part of the appellate record were the only transcripts relied upon by the trial court in deciding this matter.

Assuming that husband failed to comply with Rule 5A:10(c), wife has failed to establish that she was prejudiced thereby.  Accordingly, the appeal will not be dismissed.

-

## Standard of Review

"We review the evidence in the light most favorable to wife, the party prevailing below and grant all reasonable inferences fairly deducible therefrom." Anderson v. Anderson, 29 Va. App. 673, 678, 514 S.E.2d 369, 372 (1999). "A commissioner's findings of fact which have been accepted by the trial court 'are presumed correct when reviewed on appeal and are to be given "great weight" by this Court.'" Barker v. Barker, 27 Va. App. 519, 531, 500 S.E.2d 240, 245-46 (1998) (citation omitted).

"In reviewing an equitable distribution award on appeal, we have recognized that the trial court's job is a difficult one, and we rely heavily on the discretion of the trial judge in weighing the many considerations and circumstances that are presented in each case." Klein v. Klein, 11 Va. App. 155, 161, 396 S.E.2d 866, 870 (1990). "A trial court's decision regarding equitable distribution will not be altered on appeal unless plainly wrong or without evidence to support it." Moran v. Moran, 29 Va. App. 408, 417, 512 S.E.2d 834, 838 (1999).

## Ownership and Value of CCI

Husband asserted that he owned only ten percent of CCI and that the remaining ninety percent was owned, in equal shares, by Joe Morris, the parties' son, Jackie Edwards, husband's daughter born out of wedlock, and Bernice Kahlor, husband's first wife. Husband introduced into evidence stock certificates dated December 1988, which were issued in the names of Morris, Edwards

-

and Kahlor. Husband never distributed the stock certificates to any of the purported owners. Edwards and Morris testified that they were unaware of the stock certificates until approximately 1995. Morris, Edwards and Kahlor never received any dividends from the stock, they never served as officers or directors of the corporation, they were never notified of any shareholders' meetings, and they did not participate in the operation of the corporation.

Wife testified that she and husband each owned fifty percent of CCI. They had purchased together with joint funds the land on which CCI was located, and had then gifted the land to CCI. Wife testified that she and husband had equal shares in all the other businesses they owned. The parties' tax returns from 1989 through 1995 reflected that husband and wife each owned a fifty percent share of CCI. Husband never told wife about the purported stock transfer, and never told her that she did not own any part of CCI. And when husband and wife borrowed $300,000 against CCI in 1994, the paperwork listed them as co-grantors.

The ownership of stock as reflected in corporate records and stock certificates is prima facie correct, see Young v. Young, 240 Va. 57, 62, 393 S.E.2d 398, 400 (1990), and re-titling of stock certificates may be technically sufficient to transfer title, see Zink v. Stafford, 257 Va. 46, 50, 509 S.E.2d 833, 835 (1999).

-

But . . . "it is quite possible and often happens, for reasons of convenience or otherwise, that stock held in the name of one person really belongs to another. In such a case the certificate, though prima facie evidence of ownership in the person to whom it has been issued, possesses no such magic or sacredness as to prevent an inquiry into the facts. Sometimes the transferee is merely a nominal holder or 'dummy,' and in that event, although the transfer may be perfectly regular and complete on its fac[e], the true ownership remains in the transferor, and that fact may be shown."

Id. at 50-51, 509 S.E.2d at 835 (citation omitted).

A transfer of stock for which no consideration is received is considered a gift inter vivos and is controlled by the principles governing such gifts. See Young, 240 Va. at 62, 393 S.E.2d at 401.

In order to establish a gift inter vivos, the following elements must be shown: (1) The gift must be of personal property; (2) possession of the property must be delivered at the time of the gift to the donee, or some other for him and the gift must be accepted by the donee; and (3) the title of the property must vest in the donee at the time of the gift. Further, the gift is effective only if the donor has donative intent at the time of the gift and if there is "such actual or constructive delivery as divests the donor of all dominion and control over the property and invests it in [the] donee."

Id. at 62-63, 393 S.E.2d at 401 (citations omitted). Moreover, "[t]he common law requirements of delivery and acceptance are not removed by those provisions of the Uniform Commercial Code

-

pertaining to the transfer of securities." Id. at 63, 393 S.E.2d at 401.

Husband never delivered the shares of stock to the purported donees, and the donees never accepted these purported gifts. Moreover, the evidence proved that husband never surrendered control of the corporation to any of the purported donees and that corporate records, including tax returns, reflected that husband and wife were the corporation's owners. Accordingly, the trial court did not abuse its discretion when it held that the transfer was ineffectual, and when it classified CCI as marital property.

### Husband's Transfer of Funds from Meadows

Husband stipulated that in January 1998, he instructed Virginia Heartland Bank to release $29,083.50 from the bank's Lee Hill and Meadows accounts and that he paid these funds to TransAmerica. Wife did not consent to these withdrawals.

The August 12, 1993 pendente lite decree prohibited such withdrawals from these accounts without the consent of both parties. The decree also prohibited the parties from dissipating marital assets. Wife filed a show cause to determine why husband should not be held in contempt for the transfers, but no hearing was ever held on the show cause. Instead, the court, based on the commissioner's recommendation, directed that husband restore $29,083.50 to Meadows' bank account.

-

In their briefs, the parties identify TransAmerica, and discuss its role in the parties' businesses. But no such evidence was ever presented to the commissioner or to the trial court. Moreover, husband violated the terms of the pendente lite decree when he withdrew these funds without wife's consent. Accordingly, the trial court did not abuse its discretion in ordering husband to replace the funds withdrawn from Meadows' bank account.

### Dissipation of Lee Hill's and Meadows' Assets

Certified public accountant Keith Wampler analyzed the financial records of Lee Hill and Meadows and testified that the properties' rent rolls typically exceeded the actual deposits in 1994 and 1995. Wampler testified that the rent rolls were not the amounts collected from tenants, but were the amounts that were expected to be collected. Stephane McKeever testified that the rent rolls exceeded deposits from April 1993 through December 1993. She admitted, however, that she could not determine how many people were evicted during this period for failure to pay rent. She also could not determine whether any payments had been made late.

Wife denied misappropriating any funds from either Lee Hill or Meadows. She testified that she was not the person who actually collected the rents at these properties, and she did not fill out the deposit tickets. Wife further asserted that

-

McKeever's figures for the Lee Hill rent rolls, which were based on trash collection statistics, were inaccurate.

It is well established that the trier of fact ascertains the credibility of the witnesses, determines the weight to be given to their testimony, and has the discretion to accept or reject the witnesses' testimony. See Street v. Street, 25 Va. App. 380, 387, 488 S.E.2d 665, 668 (1997) (en banc). "'In determining whether credible evidence exists [to support the trial court's findings,] the appellate court does not retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of witnesses.'" Moreno v. Moreno, 24 Va. App. 190, 195, 480 S.E.2d 792, 795 (1997) (citation omitted).

Wife denied misappropriating funds from Lee Hill or Meadows. Although husband presented circumstantial evidence suggesting that wife had dissipated these marital assets, the trial court believed wife's testimony and rejected husband's evidence. The trial court did not err, therefore, when it found that wife had not dissipated the assets of Meadows and Lee Hill.

### Classification and Valuation of Preferred

Wife incorporated Preferred on August 29, 1995. Wife testified that she capitalized the business with just over $1,000 she received as her last two paychecks from Jeff Davis. She denied that she used any Jeff Davis funds to capitalize the

-

business.  Wife owned fifty percent of Preferred, and her son Theodore Morris owned the other half.

Preferred is in the business of connecting sellers of mobile homes with those looking to buy mobile homes.  Although the company occasionally buys a mobile home to sell, it primarily acts as a "middle man," for which services it generally receives the difference between the price it agrees to pay the seller and the price it negotiates with the buyer.

As of December 31, 1996, the date of valuation, Preferred owned no real property and it did not maintain a regular inventory.  The company leased office space, rented office equipment, and owned a computer and limited amounts of used furniture worth $4,500.  Including cash deposits, the company had assets worth $97,011 and net liabilities of $53,591.83.  Wife estimated that good will was worth $10,000, for a total net equity of $53,419.77.

Husband contended that Preferred should be classified as marital property because it was partially started with marital funds.  He testified that it would not be possible to capitalize this type of business with less than $30,000.  Husband presented evidence that wife had transferred approximately $19,000 from Jeff Davis to Preferred, and he asserted that she used this money to capitalize Preferred.  Wife explained that the $19,000 was the proceeds from a Preferred contract that was mistakenly deposited into Jeff Davis' account.

-

Husband further asserted that Preferred should be valued at $607,563.17. He reached this figure by multiplying his estimation of Preferred's net income by 2.5. Husband asserted in a letter by counsel that Linda Tomlin had an agreement whereby she was to be paid an annual salary equal to thirty percent of Preferred's net income and that Tomlin earned nearly $73,000 from Preferred in 1996.

The trial court found that wife's one-half interest in Preferred was separate property. The court rejected husband's contention that Preferred had been started with marital funds. The court valued Preferred at $73,419.17 based on the firm's net assets and an assigned goodwill value of $30,000. The commissioner had noted that this goodwill value "seem[ed] appropriate given the short existence of the business but [its] relative success." The trial court rejected husband's assertion that Preferred should be valued based on a net income valuation, noting that Jeff Davis, which was awarded to husband, had also been valued based on asset valuation.

Although there is a presumption that all property acquired during the marriage is marital property, this presumption does not apply to property acquired after the parties' last separation. See Code § 20-107.3(A)(2). Property acquired after the parties' last separation should not be classified as marital property unless marital assets were used to acquire it. See Price v. Price, 4 Va. App. 224, 229, 355 S.E.2d 905, 908 (1987).

-

"The burden of proving that property purchased after the last separation is marital is on the proponent . . . ." Id.

In making an equitable distribution of property, the trial court "must assign a value to the property based upon evidence presented by both parties." Marion v. Marion, 11 Va. App. 659, 665, 401 S.E.2d 432, 436 (1991). "We will not disturb a trial court's finding of the value of an asset unless the finding is plainly wrong or unsupported by the evidence." Shooltz v. Shooltz, 27 Va. App. 264, 275, 498 S.E.2d 437, 442 (1998).

Wife formed Preferred two years after the parties' final separation, and husband failed to prove that any marital assets were used to capitalize that firm. Husband asserted that $19,000 from Jeff Davis had been misappropriated by wife and used to form Preferred, but he presented no evidence to support this allegation, and the trial court accepted wife's explanation of the transfer. Accordingly, the trial court did not err when it classified Preferred as wife's separate property.

The trial court also did not err in valuing Preferred. Wife presented evidence supporting a valuation based on asset valuation, which was the same method of valuation used to value Jeff Davis. Although there was evidence that Preferred had a high cash flow, wife testified that net income was relatively low. Furthermore, although husband asserts that Preferred should have been valued based on the firm's net income, he presented no evidence regarding Preferred's net income, and he

-

failed to establish that this was a proper method for valuing this business.

### Attorney's Fees from South Carolina Litigation

The parties jointly owned a hotel in Myrtle Beach, South Carolina. After the final date of separation, husband attempted to transfer the hotel property deed from a corporation the parties jointly owned, to a corporation of which he was the sole owner. When this effort was subsequently voided by a South Carolina court, husband placed a $500,000 mortgage against the hotel. The mortgage was held by a corporation that was solely owned by husband, but that had not loaned the hotel any money.

Wife instituted successful litigation in South Carolina and obtained an order setting aside the mortgage. She incurred $12,226.51 in legal fees in this litigation. The South Carolina court's order makes no reference to attorney's fees. Wife had no recollection whether she asked for or was denied attorney's fees.

Husband contends that wife should be collaterally estopped from claiming attorney's fees because the South Carolina court denied her request for fees. We disagree.

"The doctrine of collateral estoppel precludes parties to a prior action and their privies from litigating in a subsequent action any factual issue that actually was litigated and was essential to a valid, final judgment in the prior action." Angstadt v. Atlantic Mut. Ins. Co., 249 Va. 444, 446, 457 S.E.2d

-

86, 87 (1995) (emphasis added).  For the doctrine to apply, there must be an identity of issues litigated.  See id. at 447, 457 S.E.2d at 88.

The South Carolina order makes no reference to attorney's fees, and husband has presented no evidence that the issue was even presented to the South Carolina court.  The doctrine of collateral estoppel is, therefore, inapplicable.  Accordingly, the outcome of the South Carolina litigation did not preclude the trial court from including these funds as part of the equitable distribution award.[2]

## Award of Meadows to Wife

As of December 31, 1996, Meadows was valued at $4,020,000. The debt on the property included a $2,143,375 note and $35,800 in security deposits.  Husband and wife were both listed as principals on the note.

One of the conditions on the note imposed by the lender pertained to transferring ownership interests in Meadows:

> Transfers of no more than forty-nine percent
> (49%) of the ownership interests in
> [Meadows] shall be permitted so long as (a)
> the Principal owns in aggregate, at least
> 51% of the ownership interests in [Meadows]
> and (b) [husband] remains the sole decision
> maker of [Meadows].

---

[2] Husband also contends that this aspect of the equitable distribution award violated the general rule that parties are responsible for their own attorney's fees.  The appellate record does not reflect that husband made this argument to the trial court, and we will not address it for the first time on appeal. See Rule 5A:18.

-

The loan documents further provided that the lender could allow a transfer of majority ownership interest at its discretion, with the charge of a fee and costs. In the event of such a transfer, the transferee would assume all the transferor's obligations under the loan agreement.

The deed of trust securing the note further provided that "[u]pon any such prohibited sale or transfer or if [husband] fails to continue to control the Grantor's business, then Beneficiary may, at Beneficiary's option, declare all of the indebtedness to be immediately due and payable." (Emphasis added.) The deed of trust reiterated that ownership in Meadows could be transferred at the lender's discretion.

After classifying and valuing the parties' property, "the court distributes the property to the parties, taking into consideration the factors presented in Code § 20-107.3(E)." Marion, 11 Va. App. at 665, 401 S.E.2d at 436. "It is precisely 'because rights and interests in marital property are difficult to determine and evaluate and competing equities are difficult to reconcile,' that 'the chancellor is necessarily vested with broad discretion in the discharge of the duties the statute imposes.'" Matthews v. Matthews, 26 Va. App. 638, 645-46, 496 S.E.2d 126, 129 (1998) (quoting Smoot v. Smoot, 233 Va. 435, 443, 357 S.E.2d 728, 732 (1987)). And "[i]n challenging the court's decision on appeal, the party seeking reversal bears the

-

burden to demonstrate error on the part of the trial court."

Barker, 27 Va. App. at 535, 500 S.E.2d at 248.

Pursuant to the parties' stipulation, the trial court evenly divided the parties' marital property.  There was no evidence that the Meadows note holder was likely to call the note simply because husband was required to transfer his ownership interest to wife and surrender control over that business.  Moreover, wife assumed the obligation on the note, and husband has not established that he would be prejudiced if the lender decided to call the note.  Accordingly, husband has failed to establish that the court abused its discretion when it awarded Meadows to wife.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.