COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Fitzpatrick, Judge Humphreys and Senior Judge Willis
Argued at Alexandria, Virginia


FATEMEH NASRIN GHODS
                                                    MEMORANDUM OPINION* BY
v.        Record No. 1675-04-4          CHIEF JUDGE JOHANNA L. FITZPATRICK
                                                           MARCH 15, 2005
JOHN D. MUSICK


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Jonathan C. Thacher, Judge

   Jahangir Ghobadi (Jahangir Ghobadi, P.C., on briefs), for
   appellant.

   Caroline E. Costle (Cary S. Greenberg; Rich Greenberg
   Rosenthal & Costle, LLP, on brief), for appellee.


   Fatemeh Nasrin Ghods (wife) appeals from a final decree of divorce awarded to John D.

Musick (husband) on the ground that wife willfully deserted husband pursuant to Code

§ 20-91(A)(6).  On appeal, wife contends that the trial court erred in:  1) awarding husband a

divorce based on desertion, and 2) making its equitable distribution award.  For the reasons that

follow, we affirm.

I.  FACTUAL BACKGROUND

   "On appeal, we construe the evidence in the light most favorable to [husband], the

prevailing party below, granting to [the] evidence all reasonable inferences fairly deducible

therefrom."  Donnell v. Donnell, 20 Va. App. 37, 39, 455 S.E.2d 256, 257 (1995) (citing

McGuire v. McGuire, 10 Va. App. 248, 250, 391 S.E.2d 344, 346 (1990)).

_____

   * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

The parties were married on November 20, 1998, and separated on September 10, 2001, approximately thirty-four months later. They had no children together. At the time of marriage, husband was one month away from mandatory retirement with United Airlines (United), where he was a pilot for approximately thirty-five years. Husband's assets were worth over one million dollars, and he was entitled to receive a monthly annuity from United upon retirement. He lived in a home that he had purchased in 1969.

Wife refused to move into husband's home after the parties were married and remained in a townhouse she owned. She stayed at husband's house periodically, from one to a few nights a week, and often slept on the couch. Wife told husband that she remained in her townhouse in order to take care of her parents who were visiting from Iran. However, after her parents returned to Iran she continued to reside in her townhouse. At wife's request, and in an effort to encourage wife to move in with him, husband re-titled his home by executing a deed of gift naming himself and wife as tenants by the entirety. However, wife still refused to move in with husband. Husband made all mortgage payments on the home.

When wife sold her townhouse in December 2000, she placed the proceeds of $44,000 from the sale in an account in her daughter's name, put most of her belongings in storage, and moved in with a friend. Despite this, husband bought wife furniture for a separate bedroom in his home at her request. She began to occupy this room when she stayed at the marital home. Beginning in 2001, wife spent approximately two months each year in Iran, and continued to keep her mail, phone number, and belongings separate from husband's. During the marriage the parties consistently argued about wife's refusal to permanently move in with husband.

The marital difficulties culminated in an argument on September 10, 2001 at the marital residence. After wife threw a remote control across the room, husband called wife's son to come pick her up so that they could both cool off. After wife left, husband repeatedly asked her to

return to the home. She refused, and conditioned her return on husband giving her additional money. Although on one occasion husband acquiesced and gave her $1,000, wife still did not return and continued to demand money. The trial court found that wife intended to desert husband and that husband intended to persuade wife to return to the marriage and move in with him.

In December 1998, approximately forty-one days after the parties were married, husband retired from United. At that time he was required to choose from various pension plan benefit options. Option A, a "Lifetime Annuity with Remainder" would pay husband $8,819.16 per month for life only. Option C, a "66 2/3% Contingent Annuity" would pay husband $7,037.69 per month for the remainder of his life, and upon his death pay wife a sixty-six and two-thirds percent annuity, or $4,694.14 per month for life. Husband wished to choose Option A, and purchase additional insurance on his life payable to wife upon his death, believing this to be the most cost effective plan. However, Option A required wife's consent, which she would not give. Husband designated Option C, which became irrevocable when payments began. As part of its equitable distribution award, the trial court ordered wife to pay husband the difference between the monthly payments of the two plans, or $1,781.98 per month.

During the marriage, husband made financial contributions to wife of over one hundred thousand dollars. These included approximately $20,000 towards the mortgage on her townhouse, $7,500 in improvements to the townhouse, jewelry, a $30,000 Lexus, approximately $1,200 monthly spending money, over $3,500 for a trip to Iran, and approximately $5,500 to pay off her credit card debt.

## II. PROCEDURAL BACKGROUND

Husband filed a bill of complaint for divorce on January 17, 2002, on the grounds of desertion and abandonment, and asked for equitable distribution and attorney's fees. The parties

entered into a consent order regarding spousal support, whereby husband was to pay wife $1,375 per month until either of the parties' death or wife's remarriage, or after twenty-four payments.

The trial court entered a decree of reference on April 7, 2003, appointing a commissioner to hear evidence regarding the grounds of divorce in the case. A hearing was held on May 23, 2003, and the commissioner filed his report on June 13, 2003. The commissioner recommended that neither party be awarded a divorce based upon fault grounds, but that husband be granted a divorce based on the parties' having lived separate and apart without cohabitation for at least one year. He found that wife intended to terminate the marital relationship at that time and that the "primary responsibility for the dissolution of the marriage must fall on [wife]." The commissioner found that while husband was looking "for a companion," wife was looking "for a provider, (a 'meal ticket')" and was not committed to the marriage.

In a letter opinion on May 20, 2004, the trial court concluded that "the Commissioner's ruling on the grounds of divorce should not stand" and that "the evidence shows that [wife] deserted [husband] by substantially more than a preponderance of the evidence." The trial court ruled that "it was [wife's] decision to desert the marriage and not return, despite her husband's numerous attempts to get her to return to the marriage and his home."

In making its equitable distribution award, the trial court considered the required factors of Code § 20-107.3. It found that wife made no monetary or non-monetary contributions to the well-being of the family or to the care and maintenance of the marital property:

> The Court must consider the contributions, monetary and non-monetary, of each party to the well-being of the family. Va. Code § 20-107.3(E)(1). From a monetary standpoint it seems clear the [husband] was the sole contributor to the well-being of the family. At all times [wife's] income from her employment went into her own separate account and was never used for the well-being of the family. As far as non-monetary contributions, [wife] contributed virtually nothing. The Commissioner noted that "[t]he responsibility for the deterioration was primarily [wife's] unwillingness to commit herself to the marriage."

- 4 -

Accordingly, the trial court awarded the marital home to husband, and ordered the parties to re-title the home in husband's name. It granted wife a monetary award of five percent of the value of the home, or $16,726.11.

Regarding the distribution of husband's pension plan, the trial court found that wife "held [husband] 'hostage' by refusing to sign the retirement annuity plan unless he selected the survivor benefit plan," which would pay wife an annuity upon his death. It ruled that husband's pension was his separate property. Additionally, the trial court ruled that under the facts of this case wife should be required to pay husband $1,781.98 to offset the monthly reduction in his pension payment as a result of allocating wife the survivor benefits. The equitable distribution order and the final decree of divorce were entered on June 25, 2004.

### III. GROUNDS FOR DIVORCE

Wife first contends that the trial court erred in awarding husband a divorce based on desertion pursuant to Code § 20-91(A)(6). She argues that the trial court failed to give proper deference to the commissioner's findings that "[n]either party presented enough proof to recommend a divorce based upon fault." We disagree, and affirm the ruling of the trial court.

It is well established that when a trial court "refers a case to a commissioner in chancery, it does not delegate its judicial functions to the commissioner, and is not bound by the commissioner's recommendations. 'Rather, the court must review the evidence, apply the correct principles of law, and make its own conclusions as to the appropriate relief required.'" Price v. Price, 4 Va. App. 224, 228, 355 S.E.2d 905, 907 (1987) (quoting Dukelow v. Dukelow, 2 Va. App. 21, 26-27, 341 S.E.2d 208, 211 (1986)). Additionally, Code § 8.01-610 provides: "The report of a commissioner in chancery shall not have the weight given to the verdict of a jury on conflicting evidence, but the court shall confirm or reject such report in whole or in part, according to the view which it entertains of the law and the evidence."

Code § 20-91(A)(6) provides for a divorce "Where either party . . . willfully deserted or abandoned the other . . . ." Desertion consists of: 1) "'[a] breaking off of the matrimonial cohabitation,'" and 2) "'an intent to desert in the mind of the offender.'" Brawand v. Brawand, 1 Va. App. 305, 309, 338 S.E.2d 651, 654 (1986) (quoting Nash v. Nash, 200 Va. 890, 893, 108 S.E.2d 350, 352 (1959)). The burden of proof in desertion cases is by a preponderance of the evidence. See Bacon v. Bacon, 3 Va. App. 484, 490, 351 S.E.2d 37, 40 (1986).

In its letter opinion, the trial court deviated from the commissioner's findings:

> The court, however, reaches a different conclusion than the Commissioner regarding [wife's] desertion. Although evidence establishes that [husband] asked her son to take [wife] from the property to preclude any further argument, it was [wife's] decision to desert the marriage and not return, despite her husband's numerous attempts to get her to return to the marriage and his home. [Wife] steadfast [sic] conditioned her return on whether or not [husband] would give her additional money.

The trial court also found that the commissioner erred by applying the incorrect legal standard: "This Court, after reviewing the Commissioner's report, finds that the evidence shows that [wife] deserted [husband] by substantially more than a preponderance of the evidence." We hold that the trial court was not required to accept the commissioner's legal findings. Rather, he applied the law to the facts accepted by the commissioner. When husband called wife's son to come pick her up, his intention was to effect a cooling off period. Husband intended for wife to return to the marriage after the argument on September 10, 2001, and attempted on numerous occasions to persuade her to return. In response, wife demanded money from husband. Even when husband acquiesced and gave her approximately $1,000, wife still refused to return.[1] She refused to live in the marital home throughout the marriage and, as found by the commissioner, her behavior throughout the brief marriage was the primary reason for its dissolution. We

---

[1] We note that "husband's request during arguments that wife leave the home do not support a constructive desertion claim." Brawand, 1 Va. App. at 309, 338 S.E.2d at 653.

- 6 -

therefore hold that the trial court did not err in finding the evidence as presented before the commissioner sufficient to establish desertion as the basis for the divorce.

## IV.  EQUITABLE DISTRIBUTION AWARD

Wife next contends the trial court erred in:  1) ordering wife to pay husband $1,781.98 per month to offset her payments as a beneficiary of husband's pension plan as being inequitable, and 2) awarding husband 95% of the marital home.

"In matters of divorce and equitable distribution, we will not overturn a decision committed to the trial court's sound discretion unless there is a showing that it abused that discretion.  An abuse of discretion can be found if the court uses 'an improper legal standard in exercising its discretionary function.'"  Morrill v. Morrill, 43 Va. App. 621, 627-28, 600 S.E.2d 911, 914 (2004) (quoting Congdon v. Congdon, 40 Va. App. 255, 262, 578 S.E.2d 833, 836 (2003) (citations and internal quotations omitted)).

In its letter opinion, the trial court ruled as follows:

> The Court finds that [husband's] pension is his separate property.
> [Husband] worked for over twenty year [sic] for the pension he
> would receive upon his retirement.  The Parties married on
> November 20, 1998.  [Husband] retired forty-one days later.  The
> Court finds that the overlap of a little over one month is *de minimis*
> and does not transmute the pension into marital property.  After
> considering the equities and the rights and interests of each party in
> the pension, the Court agrees with [husband's] counsel that [wife]
> should be required to contribute to the $1,781.98 reduction
> [husband] will receive monthly.

Wife contends that the trial court's requirement that she pay husband the difference between his full retirement benefits and his reduced benefits was inequitable and an abuse of discretion.[2]  We disagree.

---

[2] Wife also contends on brief two additional grounds:  1) the trial court abused its discretion in failing to consider that husband's choice of pension distribution was voluntary based on Exhibit I, and 2) the trial court's distribution of husband's pension benefits does not comport with the requirements of Code § 20-107.3(G)(2).  Wife did not make these arguments at

- 7 -

The trial court considered Code § 20-107.3(A)(2) when it designated husband's pension as separate party. That section provides, in pertinent part:

> All property including that portion of pensions, profit-sharing, or deferred compensation or retirement plans of whatever nature, acquired by either spouse during the marriage, and before the last separation of the parties, if at such time or thereafter at least one of the parties intends that the separation be permanent, is presumed to be marital property in the absence of satisfactory evidence that it is separate property.

Husband earned the pension during his thirty-five year employment with United Airlines, and retired just over one month after the marriage. Wife does not contest the trial court's classification of husband's pension as his separate property. As the trial court noted, the one month period of marriage makes any marital portion "*de minimus*," and wife's contributions to the marriage and the pension were non-existent. Her demand that husband choose the option that reduced his payments but gave her a "66 2/3% contingent annuity" was "a decision for which he will be forever financially penalized." Expert evidence established that, based on actuarial tables, this plan had the potential to pay wife over $760,069.98 during the course of her life and that the present day value of the annuity was $360,000. In considering all of the required factors under Code § 20-107.3 in arriving at the equitable distribution award, the trial court specifically noted the short duration of the marriage and the failure of wife to participate as a marital partner. Under the facts of this case, we cannot say it was inequitable for the trial court to fashion an award that required wife to reimburse husband for the partial loss of his pension benefits. See also Code § 20-107.3(G)(2).

---

trial or in her later filed motion to reconsider. Rule 5A:18 states that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling, except for good cause shown . . . ." "An objection made at trial on one ground does not preserve for appeal a contention on a different ground." Clark v. Commonwealth, 30 Va. App. 406, 411, 517 S.E.2d 260, 262 (1999). Accordingly, we cannot consider these additional bases. We also note that at argument, appellant conceded that her argument was limited to the award being inequitable.

Wife next contends that the trial court abused its discretion in awarding her only 5% of the value of the marital home, or $16,726.11. She contends that the award was improper because husband re-titled the property by executing a deed of gift, naming himself and wife as tenants by the entirety. This argument is without merit.

The home in dispute was husband's primary residence, and had been since 1969. Wife never moved into the home after the marriage on a full-time basis, and this was a consistent subject of disagreement between the parties. Wife told husband that because he had lived in the home with his ex-wife, she didn't consider the house her home. Husband asked wife if putting her name on the deed would make her feel as if it was hers, and she said that it would. Thus, in the summer of 1999, husband agreed to re-title the property in the parties' names jointly, as tenants by the entirety. Accordingly, the trial court classified the home as marital property, but noted "it is difficult . . . given the limited amount of time [wife] actually stayed there." Wife never made any contributions to the mortgage payments on the home. The parties stipulated that the home's value was $550,000, subject to two mortgages totaling $215,477.72, and that the total marital equity in the home was $334,522.28.

In making its equitable distribution award, the trial court was required to consider the factors of Code § 20-107.3(E), including the monetary and non-monetary contributions of each party to the family and marital property, the duration of the marriage, how the property was acquired, and other factors the court deems necessary. The trial court ruled on the distribution of the home as follows:

> The Court finds that [wife] made zero contribution to this property. She made no money contribution, including for household expenses, maintenance or improvements. [Wife] always kept her income in a separate account. [Wife] also made no non-monetary contribution to this property. In fact, in the entire 34 months duration of the marriage, [wife] only stayed that [sic] the property for approximately 3 months, even after [husband] executed the deed of gift. The Oakton Property shall be awarded to [husband]

and the parties shall execute the necessary documents to re-title the Oakton Property in [husband's] name. The Court will grant a monetary award to [wife] in the amount of five percent of the value of the property or $16,726.11.

The parties owned the property equally as tenants by the entirety as a result of husband's transfer. However,

[b]ecause the division of the property's value depends in part upon the factors in Code § 20-107.3(E), the amount of the award will not necessarily result in exactly one-half of the total value. Each party does have an equal legal interest, but the application of the statutory factors may justify an unequal distribution.

Lightburn v. Lightburn, 22 Va. App. 612, 618, 472 S.E.2d 281, 284 (1996); see also Theismann v. Theismann, 22 Va. App. 557, 568, 471 S.E.2d 809, 813-15, aff'd on reh'g en banc, 23 Va. App. 697, 479 S.E.2d 534 (1996).

The trial court properly weighed the statutory factors in awarding husband 95% of the marital home. It noted that wife only stayed at the home occasionally and never permanently moved in with husband, the short duration of the marriage, and wife's lack of either monetary or non-monetary contribution to the home. We therefore hold that the award was not an abuse of discretion.

Accordingly, we affirm the trial court's ruling.

Affirmed.